**Harold PARISH et al., Plaintiffs-Appellants,**

v.

**Ralph LEGION, Business Agent, et al., Defendants-Appellees.**

No. 25263.

United States Court of Appeals, Ninth Circuit.

Oct. 20, 1971.

Rehearing Denied Dec. 22, 1971.

Norman H. Kirshman (argued), of Goldstein, Gentile & Kirshman, Beverly Hills, Cal., Bell & Lebaron, Dickerson, Miles & Gang, Ltd., Las Vegas, Nev., for plaintiffs-appellants.

Barry S. Jellison (argued), Philip Paul Bowe, San Francisco, Cal., Ivan R. Ashleman, and Harry Mangrum, Jr., Las Vegas, Nev., for defendants-appellees.

Before CHAMBERS and BARNES, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

Plaintiffs-appellants, for themselves and all so-called "travelers" working within the jurisdiction of Local Union 357, International Brotherhood of Electrical Workers, AFL–CIO, brought this action against defendants-appellees, officers and members of Local 357, seeking a judgment declaring that appellants are entitled to all the rights of members in Local 357, as set forth in Section 101(a) (1), entitled "equal rights," of the Labor-Management Reporting and Disclosure Act, (the Landrum-Griffin Act), 29 U.S.C. § 411(a) (1).[1] At the conclusion

---

* Honorable William J. Jameson, United States Senior Judge, Billings, Montana, sitting by designation.

1. Section 101(a) (1) provides:
   "Every member of a labor organization shall have equal rights and privi-

of plaintiffs' case the court granted defendants' motion for an involuntary dismissal pursuant to Rule 41(b) and directed the preparation of findings of fact and conclusions of law.

Appellants are members in good standing of the International Brotherhood of Electrical Workers through membership in various locals other than 357. They have been working as construction electricians within the geographic area of Local 357.[2] They have not been accepted into membership and have not been permitted to vote in Local 357 elections or to vote at meetings on questions affecting their employment contract.

The district court found, inter alia, that (1) "acceptance or non-acceptance of 'travelers' into membership in a local union is a matter of local autonomy and cannot be accomplished without a vote of the membership" of the local union; (2) "Local 357 has set up specific residence and other standards * * * for all construction electricians who are applicants for membership in Local 357", and the "standards have not been approved by the International President of the International Brotherhood of Electrical Workers"; (3) the plaintiffs, although aware of the standards "have never attempted to challenge their validity" within the Local or International union "although internal remedies were and are available"; and (4) "under the practices, procedures and Constitution of the International Brotherhood of Electrical Workers, there is no absolute, automatic right of 'travelers' to vote on questions affecting employment conditions in the local in whose jurisdiction they are working."

On the basis of these findings the court held that plaintiffs have failed to show (1) that the Labor-Management Reporting and Disclosure Act affords a basis for judicial relief or (2) that they have exhausted their internal administrative remedies; (3) that under Section 8 of Article XXII of the International Constitution Local 357 may refuse to accept a traveler into membership; (4) that plaintiffs have failed to show that Article XXV compels Local 357 to accept a traveler into membership;[3] and (5) rights specified under Section 101(a) (1) apply "only to a labor organization to which the worker is a member" and not "to another local within the same International."

## Does the Labor Management Reporting and Disclosure Act (LMRDA) Afford a Basis for Judicial Relief?

In contending that the Act affords a basis for judicial relief, appellants rely primarily on Hughes v. Local 11 of International Association of Bridge, Structural and Ornamental Ironworkers, AFL–CIO, 3 Cir. 1961, 287 F.2d 810, cert. denied, 1961, 368 U.S. 829, 82 S.Ct. 51, 7 L.Ed.2d 32, and Ferger v. Local 483 of International Association of Bridge, Structural and Ornamental Ironworkers, AFL–CIO, D.N.J.1964, 238 F. Supp. 1016, aff'd per curiam, 3 Cir. 1965, 342 F.2d 430. Appellees rely on Moynahan v. Pari-Mutuel Employees Guild of California, Local 280, 9 Cir. 1963, 317 F.2d 209, cert. denied, 1963, 375 U.S. 911, 84 S.Ct. 207, 11 L.Ed.2d 150. It does not appear, however, that these cases are in conflict, and no one of them is precisely in point.

leges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."

2. Persons belonging to one local and working in the jurisdiction of another local are commonly known as "travelers" or "traveling brothers." Approximately 300 travelers are working within the jurisdiction of Local 357—200 of them at the Nevada Testsite, where approximately 400 voting members of Local 357 are employed.

3. Provisions of Article XXII entitled "Admission of Members" and Article XXV entitled "Traveling Cards" are discussed later herein.

In Hughes, a member in good standing of one local of an International union sought to compel transfer of his membership to another—Local 11. The district court dismissed for lack of jurisdiction. In reversing, the appellate court held that Hughes had stated a claim under LMRDA. He had alleged compliance with all of the requirements for membership in Local 11 and also that Local 11 was required by the International's Constitution to formally admit him to membership.

The court pointed out that Congress did not limit the protection of Section 101(a) (1) to those persons who have been formally admitted to membership in a labor organization and who are recognized as members by that organization. Rather under Section 3(o) [4] equal rights and privileges are extended to "anyone who has fulfilled all of the requirements of membership." [5] The court remanded for the district court to determine whether Hughes (1) had met the requirements for membership in Local 11, (2) had been deprived of his rights to participate in its affairs, and (3) whether he had "complied or should be required to comply with the proviso of Section 101(a) (4), which states that any member of a labor organization may be required to exhaust reasonable hearing procedures within such organization, but not to exceed a four-month lapse of time, before instituting proceedings against it." 287 F.2d at 819.[6]

In Moynahan, the plaintiff was not a member of a national union attempting to transfer and affiliate with one of its locals. We distinguished Hughes on this ground and also on the ground that the local had reserved the discretionary power to refuse membership.[7] We concluded in Moynahan that Congress did not intend Section 3(o) to "limit the previously recognized rights of unions to choose their members." 317 F.2d 210. This rule is also expressly recognized in Hughes, 287 F.2d at 817, and impliedly in Ferger, 238 F.Supp. at 1023.

Appellees also cite Stone v. Local 29, International Brotherhood of Boilermakers, etc., D.Mass.1967, 262 F.Supp. 961, and Abrams v. Carrier Corporation, 2 Cir. 1970, 434 F.2d 1234, cert. den. sub nom United Steelworkers of America AFL–CIO v. Abrams, 1971, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545, in support of their contention that Local 357 was not required to accept a traveler into membership. In Stone the traveler had been expelled from membership. Recognizing that "there is no legal requirement upon a Union to accept a person for membership solely because he is qualified to become a member," as held in Moynahan, the court held that plaintiff's reliance on Hughes was misplaced "because it appears that *Hughes* was a member of one Local of the International and was seeking a court order directing his admission, by way of transfer, to another Local of the same International. More significantly, it also appears from the opinion of the Court of Appeals for the Third Circuit that *Hughes*, unlike the plaintiff in the instant case, had never been validly suspended or expelled from membership in the International."

4. Section 3(o), 29 U.S.C. § 402(o), defines "member" as including any "person who has fulfilled the requirements for membership. * * *."

5. The court said further: "The actual words of the statute show plainly that Congress intended to apply some external standard in defining 'member' for the purposes of the Act. While it clearly did not intend to dictate the requirements that a labor organization might impose for membership it said very clearly that when all of these requirements have been met by a person that person is a 'member'." 287 F.2d at 817.

6. The court indicated that if the allegations of the complaint were borne out, Hughes would be entitled to all of the rights and privileges of members guaranteed by section 101(a) (1) rather than formal membership in the local. 287 F.2d at 819. See also Ferger v. Local 483, etc., supra, 238 F.Supp. at 1023.

7. One of the Union's requirements for membership was a two-thirds vote of the current membership. Moynahan did not meet this requirement.

262 F.Supp. at 963. Abrams is likewise distinguishable. In that case the plaintiffs were members of the Steelworkers Union who were asserting a claim, inter alia, for conspiracy to wrongfully deny them membership in a local of the Sheet Metal Workers Union. 434 F.2d at 1239, 1254.

Appellees contend, and the district court held, that since appellants failed to meet the membership requirements of Local 357, including a favorable vote by its current members, LMRDA affords no basis for relief. It is necessary therefore to examine the Constitution of the International Brotherhood of Electrical Workers (IBEW) to determine whether it grants a local discretionary power to refuse the rights of membership to travelers seeking to transfer their membership.

Article XVII of the International Constitution, relating to "Rules for Local Unions", contains the following provisions:

> "Sec. 7. L.U.'s are empowered to make their own bylaws and rules, but these shall in no way conflict with this Constitution. Where any doubt appears, this Constitution shall be supreme. All bylaws, amendments and rules, * * * shall be submitted in duplicate form to the I.P. for approval. * * * No L.U. shall put into effect any bylaw, amendment, rule or agreement of any kind without first securing such approval. All these shall be null and void without I.P. approval. The I.P. has the right to correct any bylaws, amendments, rules or agreements to conform to this Constitution and the policies of the I.B.E.W.

> "Sec. 8. This Constitution and the rules herein shall be considered a part of all L.U. bylaws and shall be absolutely binding on each and every L.U. member.

> "Sec. 9. All L.U. bylaws or rules in conflict with this Constitution and the rules herein, are null and void."

Article XXII of the Constitution of the International relates to "Admission of Members" and Article XXV to "Traveling Cards." Obviously these articles must be construed together in resolving the rights of plaintiffs under the International Constitution.

Article XXII refers throughout to "applicants for membership." There is no specific reference to current members of other locals.[8] Section 3 provides that the admission of an applicant into any local "constitutes a contract between the member, the L.U. and the I.B.E.W., and between such member and all other members of the I.B.E.W." Section 8 provides for a vote on all applicants for membership, and if a "majority of members present, vote in the negative, the applicant or applicants shall be rejected * * *."[9] Article XXII contains other provisions, such as the signing of a prescribed obligation card to be sent to the International (section 4) which are clearly designed for new applicants for membership.

Article XXV entitled "Traveling Cards" is apparently intended to encompass three separate relationships between a member of one local and another local: (1) the admission of a visiting member to the meetings of the local;[10] (2) the prohibition of a member of one local working in the jurisdiction of an-

---

8. Section 1 does provide that no local "can admit any applicant who formerly was a member of the I.B.E.W., or who was suspended or expelled by, or indebted to any L.U., without consent of the I.S. and without first consulting the last L.U. of which the applicant was a member in regard to his character and record. The I.P. shall decide any case in dispute."

9. The crucial question is whether this section applies to the acceptance of traveling cards by members seeking transfer to the local union.

10. Section 1 provides that a traveling or visiting member shall be admitted to a local's meeting upon presentation of his official dues receipt showing that he is a member in good standing. No travel card is necessary.

other local except under certain conditions;[11] and (3) the transfer of membership to another local.

With respect to transfer of membership, Section 2 of Article XXV provides that "any member desiring to transfer his membership" may apply to his financial secretary for a traveling card. If the member is in good standing, the financial secretary "shall grant the card" (section 3). A member may not deposit his card in any local which does not include the type of membership for which the card was issued (unless he transfers types of membership) (section 5). Under sections 8 and 9 a member may be required to pay the difference between the admission fee paid to his local and the transferee local and to take an examination.

Section 11 provides that the member's dues shall begin the first of the month "after acceptance of his card." Section 13 provides that a member "admitted on a traveling card" shall not vote on certain questions for specified periods after "his card has been accepted." Section 14 reads:

> "Any L.U. which has 10 percent of its members out of work *shall not be required to* accept traveling cards during such period of unemployment, except as provided in Section 10 of this Article, and any L.U. in recognized difficulty *shall not be required to* accept traveling cards during the difficulty, or *for 90 days after it is settled*." (emphasis supplied).[12]

It seems clear from these provisions of Article XXV that the transfer of a traveler's membership is effected through the acceptance of his traveling card and not through an application for membership under Article XXII.[13] While the provisions of Article XXV specifying the conditions for acceptance of a traveler's card are stated in the negative, there is the clear inference that if all the conditions are met, the transferee local is required to accept the card. There would be no reason for Section 14 of Article XXV, for example, if Section 8 of Article XXII requiring an affirmative vote of the members of the local present at the meeting were a prerequisite to acceptance of a traveler's card. We find nothing in the Constitution of the International which grants local unions autonomy to refuse the acceptance of a traveler's card where he has complied fully with the provisions of Article XXV.

As noted supra, under Section 3 of Article XXII the admission of an applicant into any local "constitutes a contract between the member, the L.U., the I.B.E.W., and between such member and all other members of the I.B.E.W." Under Sections 8 and 9 of Article XVII the International Constitution is a part of that contract. "The LMRDA has created new federal rights to be enjoyed by union members", enforceable in the federal courts. Parks v. International Brotherhood of Electrical Workers, 4 Cir. 1963, 314 F.2d 886, 922, cert. den. 1963, 372 U.S. 976, 83 S.Ct. 1111, 10 L. Ed.2d 142. It is necessary to construe the contract in its entirety to determine whether those rights have been violated or disregarded.

It is conceded that the International Convention has construed Arti-

---

11. Section 6 provides that a member shall not work in the jurisdiction of another local unless his traveling card has been accepted, or he has received a working card, or where locals allow their members to work by agreement or understanding in the jurisdiction of another local or where the member has received the consent of the International President.

12. Section 10 requires a local to readmit a former member who has continuously maintained his good standing with the IBEW.

13. This is confirmed by the wording of the official traveling card of the International:

> "This is to certify that . . . . . . . . . . . . . Card No. . . . ., whose signature appears on this card is a member of Local Union No. . . . . . ., and is entitled to admission to any IBEW Local Union in accordance with Article 25 of the Constitution."

cles XXII and XXV as granting locals autonomy to accept or reject travelers for membership. On the other hand, this construction has been questioned in numerous cases within the international organization. In one case, where the factual situation was similar to that here, the vice president ruled that the traveling card should be accepted by the local union. This decision was affirmed in turn by the president and by the executive council; but the International Convention reversed on the ground that the "autonomy of the local union, in matters of this kind, should not be abridged." [14]

This is not a case where *all* of the parties to a contract have uniformly adopted a practical construction of the contract. In such cases the construction by the parties is entitled to great, if not controlling, weight, and is usually adopted by the courts in determining the proper construction of the contract. 17A C.J.S. Contracts § 325(1) (2). Rather this is a case where the final authority of one of the parties—the international organization—has consistently followed a construction which repeatedly has been questioned by other parties, who of course are also members of the international. Under these circumstances, while the construction placed upon the contract by the International Convention should be considered and accorded some weight, it is not controlling or binding on the courts. Construing the constitution as a whole, we conclude that if appellants have complied fully with the provisions of Article XXV, they are entitled to the rights and privileges guaranteed by Section 101(a) (1).

*Have Appellants Failed to Exhaust their Internal Remedies?*

■ The constitution of the IBEW provides that "any member who claims an injustice has been done him by any L.U." has successive rights of appeal to the International Vice President, the International President, the International Executive Council, and finally to the International Convention. Art. XXVII, §§ 12–18.

On December 8, 1966 the appellants (except appellant Handley) wrote the International President complaining of "discriminatory practices" by the members of Local 357. The complaint was referred to the district International Vice President. Following an investigation he wrote the Secretary of Local 357 on April 25, 1967 concluding that "after all the facts are in there is no reason for the Local Union to further decline to take some of those members into the Local Union." He "strongly urge[d] the Local Union to accept the travelers from all IBEW members employed on the test site who would be eligible for referral to employment on Book 1 of the Local Union's referral system, as set forth in their labor agreements." The letter continued in part: "The Local Union should seriously consider this step in the interest of harmony in the jurisdiction and as an act consistent with the policies and practices of the IBEW generally."

It is true that the International Vice President did not order compliance with his recommendations, apparently because of the repeated holdings of the International Convention that the admission of travelers is a matter of local autonomy. Appellants were justified in concluding that the most they could expect from higher Union authority was a similar recommendation and that a further appeal within the Union would be futile. It is unnecessary to pursue interunion remedies when it is clear, as in this case, that to do so would be futile. Appellants have exhausted all reasonable internal remedies within the meaning of Section 101(a) (4) of the LMRDA. See Ferger v. Local 483, etc., supra, 238 F. Supp. at 1021–1022.

14. One of four cases contained in appendices attached to an affidavit of appellee Legion.

*Does Plaintiffs' Complaint Allege a Breach of Electoral Rights under Title IV of the LMRDA?*

■ Appellees argue further that jurisdiction is lacking because the complaint in substance charges a violation of Title IV of the Act, which governs eligibility requirements for union office. They rely primarily on Calhoon v. Harvey, 1964, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190.

In Calhoon three members of the National Marine Engineers' Beneficial Associated alleged that certain provisions of the union's bylaws and national constitution violated the Act by infringing their right to nominate candidates—a right guaranteed by § 101(a) (1). In holding that §§ 101(a) (1) and 102 were not applicable and that "eligibility requirements" are governed by Title IV, § 401(e), the Court said in pertinent part:

> "The complaining union members here have not been discriminated against in any way and have been denied no privilege or right to vote or nominate which the union has granted to others. They have indeed taken full advantage of the uniform rule limiting nominations by nominating themselves for office. It is true that they were denied their request to be candidates, but that denial was not a discrimination against their right to nominate, since the same qualifications were required equally of all members. Whether the eligibility requirements set by the union's constitution and bylaws were reasonable and valid is a question separate and distinct from whether the right to nominate on an equal basis given by § 101(a) (1) was violated." 379 U.S. at 139, 85 S.Ct. at 295.

Here we are not concerned with "eligibility requirements" or other alleged invalid election procedures. Plaintiffs allege discrimination through denial of their right to nominate candidates and to vote in elections—rights clearly guaranteed by § 101(a) (1).

*Does the National Labor Relations Board have Exclusive Jurisdiction of Appellants' Claims?*

■ Finally, appellees argue that jurisdiction is lacking because appellants' first, second and fourth claims [15] intrude "in areas reserved to the exclusive jurisdiction of * * * the National Labor Relations Board."

Shortly after the International Vice President of the IBEW had rendered his opinion recommending that the appellants be admitted to local 357, appellants filed a charge with the NLRB, alleging that the local had engaged in unfair labor practices. The Regional Director refused to issue a complaint. In denying an appeal the General Counsel recognized that "as conceded by you, the proviso to section 8(b) (1) (A) of the Act [16] precludes an unfair labor practice finding by reason of the Union's failure to honor your request for admission to

---

15. Appellees' complaint contains five claims for relief. The first contained the basic allegations that local 357 had refused to admit them into membership and had denied them rights protected by § 101 of the LMRDA. The second and third claims in addition alleged that Local 357 was about to vote on a construction contract and in a run-off election for President and business agent and alleged irreparable injury unless the local was restrained from holding these elections. The fourth claim for relief alleged that the members of Local 357 had threatened to discipline appellants if they brought

this action. The fifth claim simply contains the necessary allegations for the issuance of the temporary restraining order without notice. Since the complaint was dismissed on the merits and the elections held as scheduled, it is clear that the second, third and fifth claims are now moot.

16. 29 U.S.C. § 158(b) (1) (A). The proviso reads:
> "*Provided,* That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; * * * *"

membership" and suggested that "a requirement that the Union accord to travelers all the rights of Union members would in effect render the proviso meaningless." The opinion expressly recognized also that resort to the courts under Title I of the LMRDA might be justified "in an attempt to rectify the alleged abuses by Local 357."

It is clear that the NLRB has declined jurisdiction. In our opinion the General Counsel was correct in his conclusion that refusal to admit travelers into membership could not constitute an unfair labor practice under § 8(b) (1) (A) of the National Labor Relations Act, 29 U.S.C. § 158(b) (1) (A). Moreover, as we said in Grand Lodge of International Ass'n of Machinists v. King, 9 Cir. 1964, 335 F.2d 340, 347, cert. den., 1964, 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334, "Congress was aware that the rights conferred by the Labor-Management Reporting and Disclosure Act of 1959 overlapped those available under state law and other federal legislation, and expressly provided that these rights were to be cumulative" in section 103.[17]

■■■ Appellants seek a judgment in their favor. The action, was dismissed, however, upon the completion of the plaintiffs' case. Appellees should have an opportunity to present evidence on the question of whether appellants have complied fully with the provision of Article XXV of the International Constitution. Moreover, if, on remand, it is determined that appellants are entitled to relief, it should be limited to that appropriate to secure to appellants the equal rights and privileges guaranteed by Section 101(a) (1) and other provisions of the Labor Management Reporting and Disclosure Act.[18]

Remanded for further proceedings in accordance with this opinion.

---

17. See also Figueroa v. National Maritime Union of America, 2 Cir. 1965, 342 F.2d 400; International Brotherhood of Boilermakers, etc. v. Braswell, 5 Cir. 1968, 388 F.2d 193, cert. den., 1968, 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 854.

18. See Hughes v. International Ass'n, etc., supra, 287 F.2d at 818.