**Warren R. WOODS, Plaintiff,**

v.

**LOCAL UNION NO. 613 OF the IN-TERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Defendant.**

**No. C74–1633A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Nov. 12, 1975.

**112**

David H. Flint, Schreeder, Wheeler & Flint, Atlanta, Ga., for plaintiff.

Robert L. Mitchell, Atlanta, Ga., for defendant.

## ORDER OF COURT

MOYE, District Judge.

This is an action under Section 101(a)(1) of the Labor-Management Reporting and Disclosure Act of 1959 [LMRDA], 29 U.S.C. § 411(a)(1), for injunctive and other appropriate relief filed by Warren R. Woods against Local Union No. 613 of the International Brotherhood of Electrical Workers [Local 613]. The case is presently before the Court on the defendant Local 613's motion for summary judgment.

Plaintiff Woods is a member in good standing of Local 379 of the IBEW, Charlotte, North Carolina, and is classified as a journeyman-wireman. Defendant is a labor union affiliated with the IBEW and subject to the IBEW Constitution. Local 613 has jurisdiction over plaintiff's job classification and over construction projects in metropolitan Atlanta and most counties in north Georgia. Local 613 maintains the exclusive hiring hall for referrals of electrical workers to members of the National Electrical Contractors Association in the defendant's jurisdiction.

Since 1966 Woods has lived in Rockdale County, Georgia, and has worked in Local 613's jurisdiction as a "traveler." Woods has made several requests for a transfer of his membership from Local 379 to Local 613, but on all occasions Local 613 has refused to accept Woods into membership. Plaintiff's requests for transfer have occurred by depositing his travel card with Local 613 and by oral and written demands.

Job referrals of electrical workers by Local 613 to members of the National Electrical Contractors Association are controlled by procedures established in the collective bargaining agreement between Local 613 and the Association. Woods alleges that the referral procedures are being manipulated by Local 613 in a manner such that members of Local 613 receive the most desirable referrals and travelers receive the less desirable referrals, although often in the same referral priority group.

On two occasions Woods orally requested representatives of the IBEW to assist him in effectuating his transfer of membership to Local 613. On both occasions the IBEW orally informed Woods that the IBEW could not assist him. Woods also filed a written complaint regarding Local 613's referral practices with the defendant's business agent. Apparently no action was taken on this complaint. Subsequent to unsuccessfully seeking informal relief from the National Labor Relations Board, Woods filed the instant action.

The action at bar seeks relief and damages resulting from Local 613's denial of membership and the concomitant denial of equal rights and privileges, and Local 613's breach of its duty to fairly represent plaintiff in the negotiation and administration of collective bargaining agreements. Plaintiff asserts both claims pursuant to provisions of the LMRDA.

The issues presently before the Court are the following: First, whether the instant action is pre-empted by the National Labor Relations Act [NLRA], 29

U.S.C. §§ 157, 158, and thus within the exclusive jurisdiction of the National Labor Relations Board [NLRB]; second, whether the instant action is barred by plaintiff's failure to exhaust intraunion remedies; third, whether the action is barred by the statute of limitations; fourth, whether this Court has the power to order Local 613 to grant Woods union membership; and fifth, whether punitive damages are allowable in an action under the LMRDA.

### Pre-emption by the NLRA

Local 613 challenges the jurisdiction of the Court over the subject matter on the ground that the NLRA, 29 U.S.C. §§ 157, 158, pre-empts the instant action. Local 613 relies on *San Diego Building Trades Council, Millmen's Union v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed. 2d 775 (1959), in which the Supreme Court held:

> "When an activity is *arguably* subject to § 7 and § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board *if the danger of state interference with national policy is to be averted.*" 359 U.S. at 245, 79 S.Ct. at 780 (emphasis added)

The instant action has been brought under Section 101(a)(1) of the LMRDA which provides as follows:

> "Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."

Section 102 provides that an individual whose rights secured by Section 101 have been infringed by any violation of Section 101 may bring a civil action in a United States District Court for appropriate relief.

Section 101(a)(1) of the Act secures certain equal rights and privileges to members of a labor organization within such organization. Woods's allegations that he has not been recognized by Local 613 as one of its members must be deemed to be the equivalent of an assertion that he is not being accorded the equal rights and privileges within Local 613 secured to members of labor organizations by Section 101(a)(1) and other provisions of the LMRDA. If an individual has complied with the membership requirements of a labor organization then such individual is entitled to the rights and privileges guaranteed by Section 101(a)(1) and may bring a cause of action under the LMRDA. *Hughes v. Local No. 11 of International Assoc. of Bridge, Structural and Ornamental Ironworkers*, 287 F.2d 810 (3d Cir.), *cert. denied*, 368 U.S. 829, 82 S.Ct. 51, 7 L.Ed.2d 32 (1961); *Parish v. Legion*, 450 F.2d 821 (9th Cir. 1971); *Tomko v. Hilbert*, 288 F.2d 625 (3d Cir. 1961).

Local 613 suggests that the refusal to accept a transfer of membership is "arguably" an unfair labor practice under the NLRA, and that exclusive jurisdiction therefore lies with the NLRB. This assertion is erroneous on two counts.

First, "the purpose of the *Garmon* rule is to prevent conflicts between federal and state policy. Here, if there is any conflict at all, it is between two federal organs expressing federal policy, and Congress has declared that federal courts, and not the National Labor Relations Board are to have the primary role." *International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers v. Braswell*, 388 F.2d 193, 196 (5 Cir.), *cert. denied*, 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 854 (1968).

Second, even if the conduct is arguably subject to the NLRA it is also a violation of the LMRDA. "A clear Congressional directive that federal courts have jurisdiction to entertain suits for

damages has precedence over application of the primary jurisdiction rule." *International Bro. of Boilermakers, etc. v. Braswell, supra* at 196. Moreover, the rights secured by the LMRDA overlap those available under state law and other federal legislation, such as the NLRA, and Congress expressly provided in Section 103 of the LMRDA that these rights are to be cumulative. *International Bro. of Boilermakers, etc. v. Braswell, supra; · Parish v. Legion, supra.* See also, *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Rights guaranteed under the LMRDA are not subject to pre-emption by the NLRA. *Fulton Lodge No. 2 of the International Assoc. of Machinists and Aerospace Workers v. Nix,* 415 F.2d 212 (5 Cir. 1969).

■ Thus, the Court has jurisdiction over the instant action pursuant to Section 102 of the LMRDA. If plaintiff has complied fully with the membership requirements of Local 613 then he is entitled to the rights and privileges guaranteed by Section 101(a)(1) of the LMRDA. The assertion of a substantial claim under a federal statute, such as the LMRDA, gives the Court jurisdiction of that claim .even though the Court may ultimately determine that no cause of action upon which relief may be granted is alleged. *Hughes v. Local No. 11, etc., supra,* at 814.

■ Furthermore, the pre-emption doctrine is equally inapplicable to the plaintiff's fair representation claim. Although the NLRB regards a union's breach of its duty of fair representation to be an unfair labor practice under § 8(b) of the NLRA, *see Miranda Fuel Co.,* 140 N.L.R.B. 181 (1963), enforcement denied, 326 F.2d 172 (2d Cir. 1963), this does not bar this Court from exercising jurisdiction over Woods's action against Local 613 for breach of this duty under the LMRDA. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

*Exhaustion of Intraunion Remedies*

Local 613 asserts that Woods failed to exhaust intraunion remedies and that this action is therefore barred. Plaintiff contends that he complied with the spirit of the exhaustion doctrine and that further pursuit of intraunion remedies would be futile.

Section 101(a)(4) of the LMRDA provides in part that "any such [union] member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof." 29 U.S.C. § 411(a)(4).

There are two internal union remedies claimed to be available to plaintiff. First Article IV, Sections 16 and 17, of the Agreement between Local 613 and the Atlanta Chapter, National Electrical Contractors' Association, provides for the establishment of an Appeals Committee to consider any complaint of any employee or applicant for employment arising out of the administration by Local 613 of other provisions of the Agreement. Plaintiff attempted to comply with this provision by filing a written complaint with Local 613. However, plaintiff was allegedly informed by Local 613 that an Appeals Committee had not been formed and no grievance procedures established. Plaintiff's complaint was apparently never processed and no action taken by Local 613 despite numerous requests made by plaintiff.

Second, Article XXVII, "Misconduct, Offenses, and Penalties," Sections 12–18 of the IBEW Constitution, states that "any member who claims an injustice has been done him by any [Local Union] or trial board . . . , may appeal to the I.V.P. any time within forty-five (45) days after the action complained of." Woods did not expressly comply with this provision; however, on several occasions he orally appealed to the IBEW leadership and requested assistance in effectuating a transfer of mem-

bership. Woods was repeatedly informed that he had no basis for an appeal and that the IBEW could not provide any assistance to him.

■ The courts have interpreted the exhaustion provision of Section 101(a)(4) as permissive and not absolute. *Nix v. Fulton Lodge No. 2 of the International Assoc. of Machinists and Aerospace Workers,* 262 F.Supp. 1000, 1006 (N.D.Ga.1967), *affirmed in part vacated in part,* 415 F.2d 212 (5 Cir. 1969). There have been a variety of reasons for such an interpretation, such as economic futility, fairness and delay. A determination must be made on the state of facts in each particular case. *Detroy v. American Guild of Variety Artists,* 286 F.2d 75 (2d Cir. 1961); *Nix v. Fulton Lodge No. 2, etc., supra.*

■■ A bare claim or allegation of futility is insufficient to escape the exhaustion provisions of the LMRDA. However, in the present case the Court finds that plaintiff has made a concerted effort to comply with the spirit of the intraunion remedies available to him and for the Court to require him to further pursue such remedies would be futile. The failure of plaintiff to thoroughly exhaust existing rights of appeal to the IBEW under the facts of this case is not a bar to the present action.

### Limitations Period

■ The LMRDA does not contain a statute of limitations. In such circumstances the Court must rely on the limitations period prescribed by the state in which the litigation arose, in this case the State of Georgia. The applicable limitations period is that which Georgia would have enforced had an action seeking similar relief been brought in the Georgia state courts. To resolve this problem the Court must first determine the "essential nature" of the claim under the federal law and, second, determine what statute of limitations the state courts of Georgia would hold applicable to this type or class of action.

*Beard v. Stephens,* 372 F.2d 685, 688 (5 Cir. 1967).

■ The action at bar was filed three and one-half years after the cause of action arose. Defendant Local 613 insists that Woods's action is one for back pay and, therefore, subject to the two-year Georgia statute of limitations for back pay actions codified at Ga.Code Ann. § 3–704. *See United States v. Georgia Power Co.,* 474 F.2d 906 (5 Cir. 1973) (action to recover lost wages and like damages under Title VII of the Civil Rights Act of 1964 subject to two-year statute of limitations codified at Ga. Code Ann. § 3–704). Ga.Code Ann. § 3–704 provides the following:

"All suits for the enforcement of rights accruing to individuals under statutes, acts of incorporation, or by operation of law, shall be brought within 20 years after the right of action shall have accrued: Provided, however, that all suits for the recovery of wages, overtime or damages and penalties accruing under laws respecting the payment of wages and overtime, prior to March 20, 1943, shall be brought within two years from such date; and that all such suits for the recovery of wages, overtime or damages and penalties accruing under laws respecting the payment of wages and overtime, subsequent to March 20, 1943, shall be brought within two years after the right of action shall have accrued."

Woods, on the other hand, contends that his action is for injury to personal rights guaranteed by law, *i. e.,* the right to pursue one's own profession, and that the relief he requests is not back pay; therefore, Woods asserts that the four-year Georgia statute of limitations for injuries to personalty, codified at Ga. Code Ann. § 3–1002, is applicable. *See Muse v. Connell,* 62 Ga.App. 296, 8 S.E. 2d 100 (1939) (the right to follow one's profession is a property right and a cause of action based upon interference with this right is subject to the limitations period of Ga.Code Ann. § 3–1002).

Ga.Code Ann. § 3–1002 provides as follows:

"Actions for injuries to personalty shall be brought within four years after the right of action accrues."

The "essential nature" of Woods's grievance is the claimed denial of rights protected by federal law. The claim is essentially in the nature of a tort for the alleged violation of rights guaranteed by the LMRDA. *Sewell v. Grand Lodge of the International Assoc. of Machinists and Aerospace Workers,* 445 F. 2d 545, 550 (5th Cir. 1971).

The purpose of the LMRDA is to promote principles of union democracy; to protect employees' rights to organize, to choose their own representatives, bargain collectively, and otherwise engage in concerted activities for their mutual aid and protection. 29 U.S.C. § 401. In seeking relief under the LMRDA, Woods alleges that he is being denied these rights; in particular the rights provided in Section 101(a)(1). Woods requests both compensatory and punitive damages arising from the claimed denial of these statutory rights. Thus, the LMRDA is not a law "respecting the payment of wages and overtime" Ga.Code Ann. § 3– 704, but rather is one respecting principles of union democracy. The relief requested by Woods is not back pay, but rather compensatory damages measured in terms of lost earnings and additional punitive damages. Accordingly, the two-year statute of limitations provided at Ga.Code Ann. § 3–704 is inapplicable to the instant action.

Inasmuch as the instant action was filed approximately three and one-half years after the cause of action arose, it is unnecessary for the Court to determine at the present time whether the four-year limitations period codified at Ga.Code Ann. § 3–1002 or the 20-year limitations period codified at Ga.Code Ann. § 3–704 is applicable to the case at bar.

*Jurisdiction to Grant Union Membership*

The plaintiff requests that the Court enter judgment obligating Local 613 to grant him union membership. Plaintiff asserts that Article XXV of the IBEW Constitution, "Traveling Cards," establishes the requirements for transfer of membership and that he has fulfilled those requirements. Local 613 asserts that the Court is without power to order the union to accept Woods as a member. Moreover, Local 613 contends that membership in the union is controlled by Article XXII, "Admission of Members," and that Woods has not satisfied the requirements of this Article, or, for that matter, the requirements of Article XXV, inasmuch as he has failed to receive the required affirmative majority vote of the members of Local 613.

The legislative history of the LMRDA tends to support the proposition that nothing in the Act was intended to dictate the requirements established by a labor organization respecting membership. *Hughes v. Local No. 11, supra,* at 817. The Court cannot impair the right of the Union to implement any requirements it wishes with respect to the acquisition of membership. However, where an individual has fulfilled all of the requirements for membership prescribed by the labor organization he is a member as defined by Section 3(*o*) of the LMRDA, 29 U.S.C. § 402(*o*). Section 3(*o*) states, in substance, that a "member" of a labor organization is any person who has fulfilled the requirements for membership in that organization. Thus, Congress did not limit the protections of Section 101(a)(1) and other provisions of the LMRDA only to those persons who have been formally admitted to membership in a labor organization, but rather provided that equal rights and privileges be extended to any person who has fulfilled the requirements for membership, despite the fact that the labor organization might not have performed "the ministerial acts precedent to formal admission and recognition." *Hughes v. Local No. 11, supra,* at 815.

The pivotal issue in this regard is whether Woods has sufficiently alleged that he is a member, as defined in

Section 3(*o*), of defendant Local 613. If Woods is a "member" of Local 613 within the meaning of the LMRDA, he is entitled to the rights accorded to a union member under the LMRDA. However, he is entitled only to those rights specified under the Act; "there is no warrant in the statute for granting a member of a labor organization any other membership rights secured to him by the union's constitution and by-laws which are enforceable only under state law . . ." *Hughes v. Local No. 11, supra,* at 818. Inasmuch as Woods has not alleged pendent jurisdiction of any causes of action arising under state law, this Court has the power to grant relief only insofar as it is predicated on the Act, that is, equal rights and privileges guaranteed to "members" by Section 101(a)(1) and other provisions of the LMRDA. *Hughes v. Local 11, supra; Parish v. Legion,* 450 F.2d 821 (9th Cir. 1971). Articles XXII and XXV must be construed together in resolving the rights of the plaintiff to obtain membership in Local 613 under the IBEW Constitution.

The Ninth Circuit, in *Parish v. Legion,* 450 F.2d 821 (1971), is the only court that has had an opportunity to interpret these two Articles. The Ninth Circuit noted that Article XXII refers throughout to "applicants for membership" but makes no specific reference to current members of other locals, at 825. Section 8 of Article XXII provides for a vote on all applicants for membership, and if a "majority of members present, vote in the negative, the applicant or applicants shall be rejected . . .." However, the Court in *Parish* determined that this section applies only to new applicants for membership and does not apply to the acceptance of traveling cards by members seeking transfer from one local union to another.

The Court examined the provisions and language of Article XXV and held that Article XXV governed the transfer of membership from one local union to another, at 826. Section 2 of Article XXV provides that "any member desiring to transfer his membership" may apply to his financial secretary for a traveling card and, if the member is in good standing, the card shall be granted (Section 3). An individual may not deposit his card in any local which does not include the type of membership for which the card was issued, unless he transfers types of membership (Section 5). Sections 8 and 9 govern the payment of admission fees and admission examinations. Section 11 provides that the individual's dues begin the first of the month "after acceptance of his card." Section 13 provides that a member "admitted on a traveling card" cannot vote on certain questions for specified periods after "his card has been accepted." Section 14, prior to its amendment in 1974, read as follows:

"Any L. U. which has 10 percent of its members out of work shall not be *required to accept traveling cards* during such period of unemployment,

. . . and any L. U. in recognized difficulty *shall not be required to accept traveling cards* during the difficulty, or for 90 days after it is settled." (emphasis added)

The Court in *Parish* held that if all the conditions of Article XXV are met, then the transferee local is *required to accept the individual for membership.* In particular, the Ninth Circuit noted that there would be no reason for Section 14 of Article XXV if Section 8 of Article XXII requiring an affirmative vote of the members of the local present at the meeting were a prerequisite to acceptance of membership, at 826. This Court concurs with and adopts the reasoning and conclusions of the Ninth Circuit in the *Parish* decision.

However, on September 14, 1974, the IBEW amended Article XXV, deleting Section 14 and adding the following to Section 5:

"Nor may a traveling card be deposited in any L. U. by a member of another L. U., wishing to transfer his membership, until and unless that member

has been accepted by the L. U. into which he wishes to transfer. Each L. U. shall have full autonomy to accept or reject all requests for transfers."

This amendment was promulgated well after plaintiff's cause of action arose and he filed his complaint, and plaintiff asserts that at the time that he sought union membership he met the requirements for transfer into the defendant Local 613. It would be inequitable for this Court to hold that the IBEW can cut off the rights asserted by the plaintiff by a retroactive amendment to the IBEW Constitution. If at the time that plaintiff requested transfer into Local 613 he did in fact meet the existing membership requirements, then Local 613 must accord him the rights and privileges of a member under the LMRDA and this Court has the power to order Local 613 to grant him such rights. The Court is unable to determine without additional facts whether or not Woods did, in fact, meet the requirements set out in Article XXV at the time he requested a transfer of membership and defers ruling on this question at the present time.

### Punitive Damages

[12] Local 613 argues that punitive damages are not allowable under the LMRDA. Although there is a division of opinion among the Circuits, the Fifth Circuit holds that the better rule is to allow recovery of punitive damages under the LMRDA if the union acts with actual malice or reckless or wanton indifference to a member's rights. *International Brotherhood of Boilermakers, etc. v. Braswell*, 388 F.2d 193 (5 Cir.) *cert. denied*, 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 854 (1968). The Fifth Circuit stated that the purpose of the LMRDA is to " 'eliminate or prevent improper practices on the part of labor organizations,' . . . 29 U.S.C. § 401. The awarding of punitive damages in appropriate cases serves as a deterrent to those abuses which Congress sought to prevent. . . . As in all remedial legislation, LMRDA should be liberally construed to effectuate its purposes." 388 F.2d at 200–01.

In accordance with the decision of the Fifth Circuit, this Court holds that punitive damages may be had under certain circumstances in an action brought under the LMRDA. Whether Local 613 acted with actual malice or reckless or wanton indifference to Woods's rights is a factual issue which the Court will not determine at the present time.

In summary the Court finds the following: First, rights guaranteed under the LMRDA are not subject to pre-emption by the NLRA, even if such rights are arguably subject to the NLRA, and, therefore, the Court has proper jurisdiction to consider the action at bar. Second, plaintiff complied with the spirit of the intraunion remedies available to him and to require him to further pursue such remedies would be futile. Third, inasmuch as the "essential nature" of the plaintiff's claim is not back pay relief the two-year Georgia limitations period codified at Ga.Code Ann. § 3–704 is inapplicable to the case at bar, and therefore, the action is not barred by the statute of limitations. Fourth, although the Court does not have the power in the instant action to order Local 613 to grant union membership to Woods, if it is established that Woods has met the requirements for membership provided in Article XXV of the IBEW Constitution as they existed at the time the action was filed then the Court may order Local 613 to accord Woods the rights secured to union "members" under the LMRDA. And, fifth, the awarding of punitive damages is allowable under the LMRDA if Local 613 has acted with actual malice or reckless or wanton indifference to a member's rights.

Accordingly, the defendant Local 613's motion for summary judgment is hereby ordered denied.