Mary Lou McNAIL, Appellant,

v.

The AMALGAMATED MEAT CUTTERS
AND BUTCHER WORKMEN OF
NORTH AMERICA, AFL–CIO, et al.,
Appellees.

No. 76–2013.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1977.

Decided Feb. 9, 1977.

Michael J. Hoare (argued), and Kenneth M. Chackes, St. Louis, Mo., on briefs, for appellant.

Earl B. Wilburn, St. Louis, Mo., argued on brief, for appellees.

Before HEANEY and STEPHENSON, Circuit Judges, and STUART, District Judge.*

HEANEY, Circuit Judge.

Mary Lou McNail brought this action challenging a union rule, under which she was deemed ineligible for union office, as discriminatory and in violation of Title I of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 411 *et seq.*) (LMRDA) and of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*).[1] The election committee of Local Union No. 88 of the Amalgamated Meat Cut-

ters and Butcher Workmen of North America, AFL–CIO, in a decision subsequently ratified by the international union, ruled that McNail was ineligible to hold union office because she was not working in a bargaining unit as required by both the international and local union. The District Court held an evidentiary hearing and then dismissed the Title I claim for lack of jurisdiction, and entered judgment in favor of the defendant unions on the Title VII claim. We affirm.

McNail is a salaried employee on the staff of the business office of the local union. While she has been a union member in good standing since 1967, she has never worked in a bargaining unit represented by the local union. She actively campaigned and sought to nominate herself for the position of business representative for which elections were scheduled on October 21, 1976, with newly elected officers to take office on January 30, 1977.

The election committee ruled that McNail was ineligible to be a candidate and refused to distribute her campaign literature in accord with the constitution of the international union which provides that:[2]

No member shall be eligible to hold office in the Local Union if he or she has not been working in a bargaining unit represented by the Local Union for at least three months during the six months immediately prior to the date the vacancy occurs.

Other individuals excluded from elected union office by the bargaining unit rule are all members who are retired and all members who serve on the paid staffs of the union business office and medical institute. No evidence was presented as to either the total number of retirees, or as to the proportion of male to female retirees, excluded

---

* WILLIAM C. STUART, United States District Judge, Southern District of Iowa, sitting by designation.

1. McNail also filed timely charges with the Equal Employment Opportunity Commission. A "right to sue letter" had not been issued to

her at the time of the decision of the District Court.

2. This provision was adopted by the international union at the 24th General Convention in San Francisco, California, in June, 1976.

by the bargaining unit rule. It was stipulated that all of the eleven members excluded, who served on the union business office and medical institute staff, have been female and that it is likely that the jobs will continue to be held by females in the future. The bargaining unit rule presently excludes females from union office, exclusive of any female retirees who might also be excluded. There are currently five hundred and fifty-seven female members entitled to nominate persons for union office and eligible for such offices. Approximately one hundred and sixty-five males and no females are also excluded from holding union office by the rules denying eligibility to shop owners or members of a partnership. Six instances in which eligibility requirements for union office have been waived for males since 1964 were cited by McNail.

According to the stipulated testimony of the President of Local Union No. 88, there was no discussion of any intention to exclude the union business office staff from office, rather the purpose of the bargaining unit rule was to insure that union officers possess an active and current knowledge of day-to-day working problems within the industry.[3]

## I.

In dismissing the appellant's claim, the District Court characterized it as one basically involving the eligibility of candidates for union office and concluded that it fell within Title IV of the LMRDA and was to be resolved by the administrative and judicial procedures set out in that title. We believe that the District Court's characterization and conclusion was proper.

3. The bargaining unit rule adopted by the international was offered by the President of Local Union No. 88.

4. The pertinent part of § 101 of Title I of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA) provides:

> *Equal rights.*—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, * * * subject to reasonable rules and regulations in such organization's constitution and bylaws.

■ At issue is the interplay of Title I and Title IV, both of which arguably provide remedies to the appellant in this action. Under *Calhoon v. Harvey,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), the critical question is whether or not a union member is discriminated against in one of the rights guaranteed by Title I. *See Parish v. Legion,* 450 F.2d 821 (9th Cir. 1971); *Depew v. Edmiston,* 386 F.2d 710 (3rd Cir. 1967). Title I allows a private suit to be brought to vindicate the denial of the right to nominate candidates for union office guaranteed under the title.[4]  29 U.S.C. § 412. In contrast, Title IV provides for complaint to and an action brought by the Secretary of Labor as the exclusive means of vindicating an individual's right of candidacy for union office guaranteed under that title.[5]  29 U.S.C. §§ 482 and 483. Jurisdiction under Title I cannot be obtained, however, by the mere assertion of the denial of Title I rights if Title IV rights are essentially involved. *Calhoon v. Harvey, supra; Driscoll v. International Union of Op. Eng., Local 139,* 484 F.2d 682 (7th Cir. 1973), *cert. denied,* 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974).

■ Initially, we note that the District Court did not dismiss the action on the basis of the pleadings, but did so after it had permitted the parties to present evidence. Because unequal enforcement of eligibility requirements for union office was alleged, the complaint arguably stated a cause of action under Title I. *See Schonfeld v. Penza,* 477 F.2d 899 (2nd Cir. 1973); *Parish v. Legion, supra; Depew v. Edmiston, supra.* Since the allegations of unequal treatment were challenged, the burden was on the

29 U.S.C. § 411(a)(1).

5. The pertinent part of § 401 of Title IV of the LMRDA provides:

> In any election * * * a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject * * * to reasonable qualifications uniformly imposed)[.]

29 U.S.C. § 481(e).

appellant as the party claiming jurisdiction to demonstrate that the court has jurisdiction over the subject matter. 13 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3522 at p. 46 (1975). When the evidence submitted failed to establish the existence of discriminatory enforcement, the action was properly dismissed for lack of jurisdiction under Title I.

On its face, the bargaining unit rule challenged here applies equally to men and women and has been applied to disqualify males as well as females.[6] There are presently five hundred and fifty-seven female members eligible to run for office. Only six female members are ineligible for union office. Approximately one hundred and sixty-five male members and no female members are ineligible for union office because of the companion rule barring shop owners. The only evidence introduced to support McNail's claim of discriminatory application is the rejection of her self-nomination petition because of the application of the bargaining unit rule even though similar rules have been waived in the past for six male union members.

While we do not have the benefit of any discussion by the District Court of the six alleged exceptions, our own review of the record convinces us that an adequate explanation has been given for each of the exceptions. The exceptions are explained, in large part, by the superseding of the more restrictive provisions of the local union by the more liberal provisions of the international union. The constitution of the international union has always contained a provision that the constitution and rules of the local union must be in accord with the constitution of the international union.

In June, 1976, three retirees were nominated and elected delegates to the general convention. They were specifically authorized to do so by the international which had not yet adopted the bargaining unit rule. In 1973, Nick Blassie was nominated and unsuccessfully ran for local president while he was paying out-of-work dues as a result of a dispute with the local as to whether he was working full time in the trade. He was eligible under the less restrictive provision of the international which only excluded those not under the "jurisdiction" of the union. Additionally, he had just exhausted a ten-year suspension from union activities so that he did not have the required six months membership in good standing. Since the international had imposed the suspension, it was entitled to reduce it to ten years rather than ten years and six months. In 1970, Dominic Frasca was nominated and successfully ran for the office of trustee while paying out-of-work dues. He, too, was eligible under the less restrictive "jurisdiction" requirement of the international. In 1964, Herman Schweinel was a salaried employee of the local union's business office prior to his nomination and election as president. At the time of his election, however, the bargaining unit rule had not been adopted, and Schweinel was eligible under the less restrictive provision of the bylaws that only excluded those not under the "jurisdiction" of the international.

It is, thus, clear that others have not been granted a privilege to nominate candidates for union office denied to McNail. While McNail's self-nomination petition was rejected, the rejection was not an infringement of the right to nomination since the same qualifications are applied equally to all union members.

Since it has not been shown that the bargaining unit rule has been discriminatorily enforced, we are left only with the claim that the rule itself is not a reasonable and valid one. While we have serious doubts as to its validity as applied to full-time, dues-paying employees of the union familiar with union problems, this is an issue we cannot reach.[7] The exclusive rem-

---

6. While evidence was not offered as to the sexual composition, no claim was made that the class of retirees did not include males as well as females.

7. *See e. g., Steelworkers, Local 3489 v. Usery,* —— U.S. ——, 97 S.Ct. 611, 50 L.Ed.2d 502 (1976), and *Wirtz v. Hotel Employees Union Local 6,* 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d

edy is provided by Title IV of the LMRDA. 29 U.S.C. §§ 482 and 483.

## II.

The District Court found that a prima facie case of sex discrimination was established under Title VII of the Civil Rights Act of 1964 which makes it unlawful for a labor union to discriminate among its members.[8] *See generally McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Green v. Missouri Pacific Railroad Company,* 523 F.2d 1290 (8th Cir. 1975); *United States v. N. L. Industries, Inc.,* 479 F.2d 354 (8th Cir. 1973). It denied relief, however, because it found the purpose of the bargaining unit rule to be "legitimate, nondiscriminatory, and valid and sufficient to rebut plaintiff's claim." [9]

We cannot agree that a prima facie case of sex discrimination has been established since it has not been demonstrated that a disproportionate number of female members are excluded by the bargaining unit rule.[10] *Green v. Missouri Pacific Railroad Company, supra.* While the bargaining unit rule does operate to exclude female office staff, it also excludes both male and female retirees. A companion rule operates to exclude shop owners, all of whom are presently male. Without a showing of disproportionate impact or discriminatory enforcement, we cannot conclude that a validly promulgated union eligibility rule is a pretext for illegal sexual discrimination.[11]

Since we hold that a prima facie case was not established, we do not reach the issue of whether the District Court erred in applying a less stringent test than that of "business necessity" as required by *Griggs v. Duke Power Co., supra,* and *Green v. Missouri Pacific Railroad Company, supra.*[12]

Accordingly, we affirm the District Court's dismissal of the McNail claim under Title I of the LMRDA and the entry of judgment in favor of the defendant unions on her claim under Title VII of the Civil Rights Act.

763 (1968), where union eligibility for office requirements have been struck down as unreasonable under Title IV.

8. The pertinent part of Title VII provides:
(c) It shall be an unlawful employment practice for a labor organization—
(1) to exclude or to expel from its membership, or otherwise to discriminate against any individual because of his race, color, religion, sex or national origin[.]
42 U.S.C. § 2000e–2(c)(1).

9. *Mary Lou McNail v. The Amalgamated Meat Cutters and Butcher Workmen of North America, and its Local Union No. 88, and Local 88's Election Committee, Kenny Ebert, Chairman,* No. 76–879 C(1), (E.D.Mo., filed Nov. 10, 1976).

10. We agree with the conclusion of the District Court that McNail alleged the requisite immediate and irreparable injury for the court to assume jurisdiction absent the exhaustion of administrative remedies by the obtaining of a "right to sue letter" from the Equal Employment Opportunity Commission. *Gibson v. Kroger Company,* 506 F.2d 647 (7th Cir. 1974); *Drew v. Liberty Mutual Insurance Co.,* 480 F.2d 69 (5th Cir. 1973), *cert. denied,* 417 U.S. 935, 94 S.Ct. 2650, 41 L.Ed.2d 239 (1974).

11. We recognize that the general policy and practice with respect to minority employment, including statistics as to minority employment, are considered relevant to any showing of pretext. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Evidence was introduced that females are generally confined to a meat-wrapper classification with a rate of pay significantly less than that of meat cutters who, with six exceptions, are all male. This evidence might be sufficient to establish a prima facie case where the issue is one of employment discrimination, but the evidence is not sufficient in and of itself to establish a prima facie case where the issue is eligibility for union office.

12. If we had accepted the finding of the District Court that a prima facie case had been established, we would have had no alternative but to hold that the female office employees had been discriminated against. No evidence was offered which would tend to support a conclusion that females are not just as well qualified as males to hold union office.