**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HOT BAGELS AND DONUTS OF STATEN ISLAND, INC., and Amboy Baking, Inc., Respondents.**

No. 1160, Docket 80–4009.

United States Court of Appeals, Second Circuit.

Argued May 13, 1980.

Decided June 5, 1980.

Irving T. Bush, New York City (Miller & Bush, New York City, of counsel), for respondent Amboy Baking, Inc.

Christopher W. Katzenback, Atty., N. L. R. B., Washington, D. C. (William A. Lubbers, General Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., of counsel), for petitioner.

Before LUMBARD, MANSFIELD and MULLIGAN, Circuit Judges.

LUMBARD, Circuit Judge:

The question for decision in this case is whether or not Amboy Baking, Inc. ("Amboy") is the successor to Hot Bagels and Donuts of Staten Island, Inc. ("Bagels") and thus subject to an order issued by the National Labor Relations Board ("Board" or "NLRB") granting backpay and reinstatement to certain Bagels employees after a finding by the NLRB that Bagels had engaged in unfair labor practices. We answer this question affirmatively, and, accordingly, we grant enforcement.

Until late 1976, Bagels carried on a wholesale and retail baking business. Bagels was wholly owned by Marvin Kalkstein, who also owned wholly or in part six retail outlets in addition to the Bagels store on Amboy Road, where all the manufacturing and some of the sales operations of Bagels were located. In addition to baked goods, the Amboy Road store also sold various dairy and delicatessen items.

In late 1976, Bagels began to suffer financial reverses. Kalkstein sold his interests in retail outlets other than Amboy Road, and, in November 1976, he sold Bagels' wholesale operations. Thus, as of December 1976, Bagels consisted of one location on Amboy Road, where baked goods were made and sold in a retail shop, and various other groceries were available.

Bagels closed down entirely in the first week of December 1976. Soon afterwards, the Community National Bank and Trust Company foreclosed on a loan it had made to Bagels and obtained at auction all of Bagels' equipment (located at the Amboy Road site), on which it had had a lien. The bank then approached Kalkstein and offered to lease the equipment to him; Kalkstein planned to use profits from his new business to help pay off the Bagels loan,

which he had personally guaranteed. Kalkstein incorporated Amboy, Amboy leased the equipment from the bank, and the store opened for business on January 3, 1977 at Bagels' old location on Amboy Road.

The new store carried on essentially the same retail food and bakery business that Bagels had engaged in. Amboy had 16 employees on its payroll when it commenced business, of whom ten were former Bagels employees. About six months after opening, Amboy changed its business to one emphasizing the sale and catering of kosher foods.

In proceedings during 1976 and 1977, the NLRB found that Bagels had wrongfully dismissed five employees because of their union-related activities. As relief, the Board ordered that Bagels reinstate three of the employees with backpay, and pay backpay alone to the other two.

We granted enforcement of the Board's order against Bagels, *N. L. R. B. v. Hot Bagels and Donuts of Staten Island* (No. 77–4112) (2d Cir. Oct. 13, 1977). The order ran also against Bagels' "officers, agents, successors and assigns." It was issued pursuant to the Board's statutory authority under section 10(c) of the National Labor Relations Act, 29 U.S.C. § 160(c), which empowers the Board to order "such affirmative action . . . as will effectuate the policies of [the] Act."

The Board's present policy of enforcing remedial orders against successors to a business found to have violated the labor laws was announced in Perma Vinyl Corp., 164 N.L.R.B. 968 (1967), *enforced sub nom. United States Pipe & Foundry Co. v. N. L. R. B.*, 398 F.2d 544 (5th Cir. 1968). In *Golden State Bottling Co. v. N. L. R. B.*, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973), the Supreme Court endorsed the Board's asserted power to issue reinstatement orders against bona fide purchasers of a business against which an NLRB reinstatement order was outstanding at the time of the purchase, and whose existence was known to the purchaser. We believe the holding and reasoning of *Golden State Bottling* compel enforcement in this case.

A threshold issue in *Golden State Bottling* was whether or not the successor corporation had knowledge of the outstanding order, or had notice of the NLRB hearings. In the case at bar there is no question regarding notice, since Kalkstein was principal of both predecessor and successor corporations.

The *Golden State Bottling* court took a broad view of the Board's discretion in issuing orders against successors, approving "an emphasis upon protection of the victimized employee." 414 U.S. at 181, 94 S.Ct. at 424. Public policy is served by enforcement against successors because "employees who have been retained [by the successor] will understandably view their job situations as essentially unaltered." *d.* at 184, 94 S.Ct. at 425. Thus, Amboy employees, many of whom were witness to Bagels' apparent ability to chill union activity, might well be discouraged from union activity at Amboy unless the Board is empowered to vindicate its prior decision. *Golden State Bottling* makes it clear that the Board is within its powers when it acts to prevent a successor corporation from benefiting from unfair labor practices of a predecessor which cause a "continuing deterrent effect on union activities." *Id.*

Amboy, relying on *Burns v. International Security Services*, 406 U.S. 272, 286, 92 S.Ct. 1571, 1581, 32 L.Ed.2d 61 (1972), argues chiefly that whatever the Board's authority to impose its will on successors generally, it cannot be considered a true successor to Bagels because there has been no sale or other legal transaction between Amboy and Bagels, and because there was no finding by the Board that either or both corporations were mere alter egos of Kalkstein. A direct transaction between the violator of the labor laws against whom an order is originally entered and its eventual successor against whom it is sought to be enforced is not required. Thus, courts have enforced orders against those who have acquired businesses from banks that have foreclosed, *N. L. R. B. v. Pine Valley Division of Ethan Allen, Inc.*, 544 F.2d 742 (4th Cir. 1976), and from creditors' committees, *N. L. R. B. v.*

*Zayre Corp.*, 424 F.2d 1159 (5th Cir. 1970). The proper test is "whether the employee industry remains essentially the same after the transfer of ownership." *N. L. R. B. v. Zayre, supra* at 1162. But whatever application *Burns* has in other contexts, it does not apply here, where the same person has controlled both employers.

In this case the evidence is abundant that Amboy continued what was, in essence, Bagels' business. Amboy sold virtually the same line of goods, at the same location, with the same equipment, and with a high percentage of Bagels' former employees. The hiatus between Bagels' demise and Amboy's birth was short. Amboy's profits, if any, were to be used, in part, to meet Bagels' overdue obligations. Under such circumstances, the test of business continuity is met.

The fact that title to the equipment is now vested in the bank, and that a foreclosure sale intervened between Bagels' disappearance and Amboy's emergence, are matters which pose no legal bar to the Board's finding that Amboy is Bagel's successor. Nor was a finding that Kalkstein used either or both firms as alter egos necessary if Amboy was indeed Bagels' successor.

Amboy argues that the Supreme Court has identified the ability of a purchasing corporation to secure an indemnity or a reduction in sale price from a selling corporation in order to account for any outstanding obligations of the selling firm under NLRB orders as a factor supporting its policy of enforcing orders against successors, and that no such reduction or indemnity was possible in this case. Whatever the force of this argument in other circumstances, it is not persuasive here. The Court's citation of the indemnity and price reduction factors is directed toward showing that enforcement of NLRB orders against successors furthers various labor policy goals "at a relatively minimal cost to the bona fide successor." *Golden State Bottling v. N. L. R. B.*, 414 U.S. at 185, 94 S.Ct. at 425. This rationale is simply irrelevant where, as here, the predecessor and successor corporations are both wholly owned by the same individual, an individual who was unlikely to profit from any indemnity or price reduction, even assuming either were possible.

The order of the Board is hereby enforced.