727 F.2d 234
 115 L.R.R.M. (BNA) 2652, 100 Lab.Cas. P 10,790
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
LOCAL UNION NO. 46, METALLIC LATHERS AND REINFORCING IRON
WORKERS and United Brotherhood of Carpenters and
Joiners of America, Respondents.
 Cal. No. 151, Docket 83-4045.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 19, 1983.
Decided Jan. 31, 1984.
 
 Charles P. Donnelly, Washington, D.C. (William Wachter, William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Assoc. Gen. Counsel and Elliott Moore, Deputy Assoc. Gen. Counsel, Wash., D.C., on the brief, for petitioner.
 Robert C. Cohen, Philadelphia, Pa. (Markowitz & Richman, Philadelphia, Pa., of counsel), for respondent Local Union No. 46, Metallic Lathers and Reinforcing Iron Workers.
 Kathy L. Krieger, Washington, D.C. (Robert J. Pleasure, Washington, D.C., on the brief), for respondent United Broth. of Carpenters and Joiners of America.
 Before OAKES and VAN GRAAFEILAND, Circuit Judges, and BRIEANT,* District Judge.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 This is a petition by the National Labor Relations Board for enforcement of an order finding respondent, Local Union No. 46, Metallic Lathers and Reinforcing Iron Workers, guilty of certain unfair labor practices and respondent, United Brotherhood of Carpenters and Joiners of America (Carpenters), secondarily liable for remedying the violations. We grant enforcement as to Local 46 but deny enforcement as to Carpenters.
 
 
 2
 On August 18, 1978, Local 46 disciplined three of its members, Michael Cahill, William Murtha, and Lawrence McDermott, for their conduct in disrupting a union meeting, by precluding them from serving as foremen or shop stewards for a period of two years. This decision was affirmed on appeal by Wood, Wire and Metal Lathers International Union (International), with whom Local 46 was affiliated, except that the suspension period was reduced to one year. Cahill filed unfair labor practice charges against both Local 46 and International alleging violations of sections 8(b)(1)(A) and 8(b)(1)(B) of the National Labor Relations Act, 29 U.S.C. Secs. 158(b)(1)(A) & (B), and complaints were issued.
 
 
 3
 Prior to the first scheduled hearing, International affiliated with Carpenters, and Local 46 affiliated with the International Association of Bridge, Structural and Ornamental Iron Workers. The complaints then were amended to add Carpenters as an additional respondent.
 
 
 4
 At the time Cahill, Murtha, and McDermott were disciplined, they were employed as lathing foremen by three contractors who had bargaining agreements with Local 46. Although these agreements permitted the employers to designate which lather on a job would be foreman, the union determined which lathers were eligible for that position. The Administrative Law Judge found that, in their positions as foremen, the three men were employers' representatives for the purpose of adjusting grievances. He concluded, therefore, that their suspension constituted a violation of section 8(b)(1)(B) which makes it an unfair labor practice for a labor organization "to restrain or coerce ... an employer in the selection of his representatives for the purposes of ... the adjustment of grievances." He held that both Local 46 and International were guilty of the violation and that the Lathing Subdivision of Carpenters was jointly and severally responsible with Local 46 for remedying the violation and Carpenters was secondarily responsible. He also held that Local 46 and International had violated section 8(b)(1)(A) which makes it an unfair labor practice to restrain or coerce employees in the exercise of their rights to organize, bargain, etc., as provided in section 7 of the Act, 29 U.S.C. Sec. 157, and again imposed remedying responsibility on Carpenters and its Lathing Subdivision. The ALJ's decision was affirmed by the Board with only a slight modification which eliminated the remedying responsibility of Carpenters' Lathing Subdivision.
 
 THE SECTION 8(b)(1)(B) VIOLATION
 
 5
 Citing our decision in NLRB v. Rochester Musicians Ass'n Local 66, 514 F.2d 988 (2d Cir.1975), Local 46 argues that, before a violation of section 8(b)(1)(B) can be found, "there must be separate findings that the employee was a supervisor and that the employee had the authority to adjust grievances." This is a misreading of Rochester Musicians. We held in that case that an employee's status as supervisor did not entitle him to protection under section 8(b)(1)(B) unless he had the authority to adjust grievances. Id. at 991-93. See also Local 926, International Union of Operating Eng'rs v. Jones, --- U.S. ----, 103 S.Ct. 1453, 1460, 75 L.Ed.2d 368 (1983); Florida Power & Light Co. v. International Brotherhood of Electrical Workers, Local 641, 417 U.S. 790, 804-05, 811 n. 21, 94 S.Ct. 2737, 2744-45, 2748 n. 21, 41 L.Ed.2d 477 (1974).
 
 
 6
 The issue here, therefore, is not, as Local 46 would have it, whether Cahill, Murtha and McDermott had authority to hire, fire, lay off, and assign work, but whether they had authority to adjust grievances. The ALJ found that all three of them had this power, and, while the evidentiary support for this finding was not overwhelming, particularly in the case of McDermott, it was sufficient to satisfy the requirement of substantiality. This being so, the discipline imposed, which deprived the employers of the opportunity to designate the three men as their representatives for the adjustment of grievances for a period of one year, constituted a violation of section 8(b)(1)(B). American Broadcasting Cos. v. Writers Guild of America, West, Inc., 437 U.S. 411, 432, 98 S.Ct. 2423, 2435, 57 L.Ed.2d 313 (1978).
 
 
 7
 The ALJ held International equally responsible with Local 46 because it ratified the disciplinary measures which the latter took. Under the common law principles of agency which apply, see NLRB v. Local Union No. 3, International Brotherhood of Electrical Workers, 467 F.2d 1158, 1159 (2d Cir.1972), this holding was not erroneous. International Brotherhood of Electrical Workers v. NLRB, 487 F.2d 1113, 1128 (D.C.Cir.1972), rev'd on other grounds en banc, 487 F.2d 1143 (1973), aff'd sub nom., Florida Power & Light Co. v. International Brotherhood of Electrical Workers, 417 U.S. 790, 94 S.Ct. 2737, 41 L.Ed.2d 477 (1974); Local Union 984, International Brotherhood of Teamsters v. Humko Co., 287 F.2d 231, 242 (6th Cir.), cert. denied, 366 U.S. 962, 81 S.Ct. 1922, 6 L.Ed.2d 1254 (1961).
 
 
 8
 Before the Board could impose responsibility on Carpenters to remedy International's unfair labor practice, it had to find that Carpenters had knowledge of the charges pending against International at the time the two unions affiliated. Golden State Bottling Co. v. NLRB, 414 U.S. 168, 185, 94 S.Ct. 414, 425, 38 L.Ed.2d 388 (1973). Carpenters denied that it had actual knowledge, and no witness testified to the contrary. Our role in determining whether the Board misapplied the common law agency principles of imputed knowledge is not limited, as was that of the Supreme Court in Golden State, supra. See 414 U.S. at 173-74, 94 S.Ct. at 419-20. We do not exceed our authority, therefore, in holding, as we do, that the ALJ erred in imputing the knowledge of International's President, Charles Brodeur, "at all times material herein" to Carpenters, by whom he became employed following affiliation. This holding simply does not square with long-established common law principles of agency. See Solow v. General Motors Truck Co., 64 F.2d 105, 107 (2d Cir.), cert. denied, 290 U.S. 629, 54 S.Ct. 48, 78 L.Ed. 547 (1933); Otsego Aviation Service, Inc. v. Glens Falls Ins. Co., 277 App.Div. 612, 618-20, 102 N.Y.S.2d 612 (1951). "The knowledge which an agent receives for which his principal is to be charged must be such as is received while acting for the principal, not for another whose interests may be adverse." Drilling v. New York Life Ins. Co., 234 N.Y. 234, 240, 137 N.E. 314 (1922).
 
 
 9
 We also conclude that the ALJ erred in inferring knowledge on the part of Carpenters because "neither General President Sidell nor any other Carpenter official testified". The factual finding upon which this inference was based is clearly erroneous. Affiliation negotiations were conducted by committees of each union. Carpenters' committee consisted of its president and its first and second vice-presidents. Patrick Campbell, the second vice president, who had conducted affiliation discussions with International as far back as 1974, testified that he was present at all the 1978-79 negotiating sessions and was never advised of the pending unfair labor practice charges against International. Indeed, President Brodeur of International, in a July 1979 report to his own members in which he recommended approval of the affiliation referendum, Exhibit CX-4, stated that there was no litigation outstanding against the Union. While the ALJ is entitled to draw inferences which flow rationally from basic findings of fact, the basic findings themselves must be supported by evidence. See United States v. Baltimore & Ohio Railroad Co., 293 U.S. 454, 463-64, 55 S.Ct. 268, 272-73, 79 L.Ed. 587 (1935); Bond v. Vance, 327 F.2d 901, 902 (D.C.Cir.1964).
 
 
 10
 We conclude that the ALJ's finding of knowledge on the part of Carpenters was based upon a misunderstanding of the law and a misstatement of the facts, and, therefore, that portion of the Board's Order which holds Carpenters secondarily liable for the lost earnings of the three employees may not be enforced. In so holding, we need not reach the troublesome question whether there was a "substantial continuity of identity" between the International-Local 46-employee relationship, as it existed prior to affiliation, and the Carpenters-International-employee relationship, as it existed thereafter, at which time Local 46 and its members had left the fold and become affiliated with the Iron Workers.[1] See Howard Johnson Co. v. Detroit Local, Hotel Employees Union, 417 U.S. 249, 263, 94 S.Ct. 2236, 2243, 41 L.Ed.2d 46 (1974); NLRB v. Hot Bagels and Donuts, 622 F.2d 1113, 1116 (2d Cir.1980); Bellingham Frozen Foods, Inc. v. NLRB, 626 F.2d 674, 681 (9th Cir.1980), cert. denied, 449 U.S. 1125, 101 S.Ct. 941, 67 L.Ed.2d 111 (1981).
 
 THE SECTION 8(b)(1)(A) VIOLATION
 
 11
 Although the Board did not discuss the ALJ's finding that Local 46 and International had violated section 8(b)(1)(A), the Board did adopt the ALJ's findings, rulings and conclusions, and it did address the section 8(b)(1)(A) violation in its Order. However, neither Local 46 nor Carpenters asserted this as error in its brief in this Court. Ordinarily, such a failure to contest an agency or district court ruling is treated as an abandonment of any claim of error. Calvert v. Katy Taxi, Inc., 413 F.2d 841, 850 (2d Cir.1969); Dreis & Krump Mfg. Co. v. NLRB, 544 F.2d 320, 325 (7th Cir.1976). However, in an exceptional case, we may notice and review an error not properly asserted if a substantial injustice would be done by our failure to do so. MacEdward v. Northern Electric Co., 595 F.2d 105, 109-10 (2d Cir.1979).
 
 
 12
 Because we are not convinced that an error by the Board concerning section 8(b)(1)(A) resulted in a substantial injustice to Local 46, see Local No. 207, International Ass'n of Bridge Workers v. Perko, 373 U.S. 701, 706-07, 83 S.Ct. 1429, 1431-32, 10 L.Ed.2d 646 (1963), we grant enforcement of this portion of the Board's Order as to that respondent. For the reasons already stated, we deny enforcement of the remedial obligation imposed by the Board of Carpenters.
 
 
 13
 Enforcement of the Board's Order is granted, except as it applies to the United Brotherhood of Carpenters and Joiners of America; as to that respondent, enforcement is denied.
 
 
 14
 OAKES, Circuit Judge (concurring in part and dissenting in part):
 
 
 15
 I concur with that part of the majority's opinion which enforces the Board's order against the respondent Local Union 46. I believe, however, that we should also have enforced that part of the Board's order which found the successor International Union (the Carpenters) guilty of an unfair labor practice and which therefore made the Carpenters secondarily liable to the injured foreman. Though the practical effect of such a ruling is probably insignificant in this case, important principles of successor liability and deference to the Board's factfinding are at stake, and therefore I must respectfully dissent in part.
 
 
 16
 The majority begins its discussion of the Carpenters' liability for the unfair labor practice committed by its predecessor by correctly stating that a successor union is not responsible for the unfair labor practices of its predecessor unless it has knowledge of the charges. Cf. Golden State Bottling Co. v. NLRB, 414 U.S. 168, 185, 94 S.Ct. 414, 425, 38 L.Ed.2d 388 (1973) (acknowledging this standard for liability of a successor employer). The majority, however, then applies an incorrect test to determine whether such knowledge can be imputed to the successor International, and compounds this error by failing to give the proper deference to the Board's findings of facts on this question.
 
 
 17
 The majority utilizes as the standard for imposing successor liability "common law agency" principles. But I believe that the cases cited are not particularly useful in analyzing successor liability in a labor law context. In particular, Solow v. General Motors Truck Co., 64 F.2d 105, 107 (2d Cir.), cert. denied, 290 U.S. 629, 54 S.Ct. 48, 78 L.Ed. 547 (1933), stands for the proposition that an agent's knowledge is not to be imputed to a principal when the agent acts outside his or her authority, a holding of dubious relevance to this unfair labor practice charge. Otsego Aviation Service, Inc. v. Glens Falls Insurance Co., 277 App.Div. 612, 102 N.Y.S.2d 344 (1951), and Drilling v. New York Life Insurance Co., 234 N.Y. 234, 137 N.E. 314 (1922), stand for the proposition that when an agent acts in a transaction for two parties with potentially adverse interests, any knowledge gained by the agent cannot be attributed to either principal to his or her detriment. The principle appears to me irrelevant to the case before us.
 
 
 18
 What I believe is the correct relevant principle of law in this context, perhaps sui generis to labor law, is that it is assumed that the successor has knowledge of any unfair labor practice charges against the predecessor, and it is up to the successor to rebut this presumption of knowledge. Am-Del-Co., Inc., 234 NLRB 1040, 1041 (1978); Mansion House Center Management Corp., 208 NLRB 684, 686 (1974); see also Thomas Engine Corp., 179 NLRB 1029, 1042 (1970) (appropriate to impute knowledge of predecessor's unfair labor practices when holdover employee had knowledge), aff'd on other grounds sub nom. United Automobile, Aerospace and Agricultural Implement Workers v. NLRB, 442 F.2d 1180 (9th Cir.1971). Given that the best evidence of the knowledge generally rests with the successor and with the predecessor, which usually, as here, have a commonality of interest, this rule makes much sense.
 
 
 19
 The Board correctly applied this principle, and also marshaled enough evidence from the record to support its conclusion that the Carpenters produced insufficient believable evidence to rebut the presumption that it had knowledge of the charges. The Board and the ALJ did not find, as the majority suggests, that no Carpenters' official testified at the administrative hearing. Rather, the ALJ found and credited the Carpenters' Vice President Campbell's testimony that he had no knowledge of the charges. The ALJ and the Board did draw a negative inference from the fact that no other Carpenters' official testified at the hearing. The ALJ was justified in placing some weight on the fact that only one Carpenters' official testified at the hearing, and in drawing from the silence of the Carpenters' President, First Vice President, and all other members of the negotiating committee and staff the inference that at least some of them had knowledge of the charges. The Supreme Court has approved the Board practice of inferring knowledge from a failure to testify. Golden State, 414 U.S. at 174, 94 S.Ct. at 420.
 
 
 20
 The ALJ and the Board also found incredible the predecessor International President Brodeur's testimony that he never told any Carpenters' official of the charges against him and his International, especially since (a) he was largely responsible for committing the unfair labor practice of the International and (b) it was contemplated, and it turned out to be the case, that Brodeur would head up the Lather's Subdivision for the Carpenters. Given the fact that the affiliation agreement was negotiated by, among others, Brodeur and his attorney, both of whom were almost at the same time working on the unfair labor practice charges, the ALJ's credibility finding as to Brodeur is more than reasonable, especially when we realize that counsel for the International and for the Carpenters were in contact approximately ten days after the charges against the International were filed.
 
 
 21
 Given the strong circumstantial evidence indicating that the Carpenters had knowledge of the charges (the refusal of all but one Carpenters' official to testify; Brodeur's role in the affiliation negotiations and his knowledge of his future role as head of the Lather's Subdivision of the Carpenters; the timing of the affiliation negotiations and the unfair labor practice charges), and given the fact that it was, as a matter of law, up to the Carpenters to disprove its knowledge of the charges, the Board's finding that the Carpenters failed to carry this burden seems well supported by the evidence. Of course, if the Board's findings and conclusions are supported by substantial evidence on the record considered as a whole, its order is entitled to enforcement. See, e.g., Universal Camera Corp. v. NLRB, 340 U.S. 474, 493, 71 S.Ct. 456, 467, 95 L.Ed. 456 (1951). The fact that we may have evaluated the evidence on the record differently should have been irrelevant.
 
 
 
 *
 Of the Southern District of New York, sitting by designation
 
 
 [1]
 The Board held that "Local 46 was not part of the affiliation between the International Lathers and the Carpenters...."