Joaquin **FIGUEROA**, Ramon Pabon, and Jose Reyes, Plaintiffs-Appellees,

v.

**NATIONAL MARITIME UNION OF AMERICA, AFL–CIO, Defendant-Appellant.**

No. 181, Docket 29071.

United States Court of Appeals
Second Circuit.

Argued Nov. 20, 1964.

Decided March 11, 1965.

Robert M. Zweiman, New York City, for plaintiffs-appellees.

Charles Sovel, New York City (Abraham E. Freedman and Stanley B. Gruber, New York City, on the brief), for defendant-appellant.

Before LUMBARD, Chief Judge, and MEDINA and MARSHALL, Circuit Judges.

MEDINA, Circuit Judge:

Appellant, the National Maritime Union of America, operates a hiring hall for seamen open alike to members and non-members. The normal procedure entails registration by a seaman at the hiring hall and his referral to a shipowner who, under the terms of collective bargaining agreements negotiated with the Union, has the final say on whether to accept or reject a particular applicant. For many years the shipowners with whom the Union bargains have refused to employ any seaman known to

have been convicted under the narcotics laws. On the ground that each of the three seamen-appellees admittedly had narcotics convictions, the Union summarily refused to register them or refer them for employment.

Appellees, who are members of the Union, claim that the Union's conduct deprived them of their procedural rights secured by Section 101(a)(5) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a)(5), which provides:

"Safeguards against improper disciplinary action.—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

The trial judge held that the Union had violated this statute and directed the Union to comply with its mandate. Though we agree with the trial judge that the National Labor Relations Board does not have exclusive primary jurisdiction over this dispute and the refusal to refer for employment may constitute "discipline" within Section 101(a)(5), we hold that in the circumstances of this case the Union is not required to grant appellees a hearing.

## I.

### Facts

Many years ago each of the appellees was convicted of unlawfully possessing narcotics, but they had been employed for some time as seamen and were members of the appellant Union until March 6, 1958. On that date Government Customs Agents became aware of these old convictions and arrested the three seamen on board the SS "Independence,"

charging that they had left the country without registering as violators of the narcotics laws. These charges were not pressed, but the result was that the Union thereafter refused to register these men at the hiring hall or to refer them to shipowners for employment as seamen.

As stated previously, the policy of the shipowners bargaining with the National Maritime Union had for some time been not to employ on their vessels any persons known to have participated in any crime involving narcotics. In 1957 the collective bargaining agreement negotiated by the Union with the shipowners provided in terms that the Union shall not be required to register a seaman "whom it does not consider to be suitable for employment," and it was agreed that "in passing upon the suitability of applicants for registration" the Union shall give consideration to such matters as habitual drunkenness, illegal possession of lethal weapons, immoral or indecent conduct, and "illegal possession or use of narcotics." Admittedly, union and nonunion applicants for employment received the same treatment.

After discovery of the narcotics convictions events moved swiftly. The Union not only refused to register and refer the three seamen, but it also applied automatic suspension of membership under Article 22, Section 3 of the Union constitution,[1] although the convictions of two of the seamen were long prior to the period of their membership in the Union, and the conviction of the third preceded the adoption by the Union of this section of the constitution.

Charges of unfair labor practices under Sections 8(b)(1)(A) and 8(b)(2) of the National Labor Relations Act were filed by the seamen with the Labor Board. These charges were promptly dismissed by the Regional Director for lack of merit, and on appeal the General Counsel sustained this ruling because he concluded "there is insufficient evidence of

1. Which provides in relevant part:
"Any member * * * found guilty by any court of law during such period of membership of committing offenses involving the possession * * * of narcotics * * * shall stand automatically suspended from the Union."

violations to warrant further proceedings." This brings us to June 25, 1958.

A suit in the New York State Supreme Court by the seamen against the Union for damages and an injunction resulted, after trial, in a judgment directing the Union to reinstate the seamen as members of the Union. The Court found, however, that the refusal to register and refer was entirely legal and proper as it was the Union's duty to pass upon the qualifications of seamen and it was not "unreasonable and arbitrary for union officials to refuse to refer a man who has been convicted of a crime involving narcotics." Pabon v. Curran, N.Y.Co.Sup. Ct., 1959, 37 CCH Lab.Cas. Par. 65,492.

On October 7, 1959, following their restoration to membership, the seamen again attempted to register, registration and reference for employment were refused without charges or a hearing and the Permanent Appeals Board denied an appeal. The seamen were again turned down by the General Counsel and this action was commenced on September 7, 1960.

Trial without a jury was conducted by Judge Wyatt on January 29, 1964. Deeming the equities of the case to rest with the seamen, the judge, on February 14, 1964, directed the Union to comply with the procedural requirements of Section 101(a)(5), described as "the limit of the relief which this Court can grant." The Court also observed:

> "There must be something seriously amiss when a man like Figueroa—a Union member since 1940 and apparently an employed merchant seaman without any blot on his record for eighteen years—is deprived of his job because of a single narcotics conviction twenty-eight years ago and five years before he became a member of the Union and began employment as a seaman."

This appeal by the Union followed.

## II.

### Preemption

The Union contends that the District Court had no jurisdiction to adjudicate this controversy because it is within the exclusive competence of the National Labor Relations Board. Relying on San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon, 1959, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, and Local 100, United Ass'n of Journeymen & Apprentices v. Borden, 1963, 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638, the Union asks us to hold that as this case concerns "employment" rights rather than "membership" rights, only the Labor Board can decide it. We reject this argument and hold that the District Court properly asserted jurisdiction over this action.

In Garmon, the Supreme Court enunciated the principle that when an activity is "arguably" a concerted activity protected under Section 7 of the National Labor Relations Act or an unfair labor practice prohibited by Section 8, "the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." 359 U.S. at 245, 79 S.Ct. at 780. This principle was applied in Borden, where the complaint, like the one in Garmon, was predicated on a state-created cause of action.

It follows from the fact this suit is based on an alleged violation of federal law that Garmon and Borden are not necessarily controlling. See also Smith v. Evening News Ass'n, 1962, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246; Carey v. Westinghouse Elec. Corp., 1964, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320. We must, however, examine the ground upon which it is contended that the Labor Board has exclusive jurisdiction over this case to determine whether the general policy emanating from Garmon ought nonetheless be applied.

According to Garmon, preemption may be appropriate where the conduct in question is "arguably" either a protected concerted activity or a prohibited unfair labor practice. Is it "arguable" that the Union in applying its agreed upon standard of suitability for employment

as seamen to union and non-union applicants alike and without discrimination or favor was guilty of an unfair labor practice under Sections 8(b)(1)(A) and 8(b)(2)? We think not. In fact it is perfectly obvious that the Union has committed no unfair labor practice and the General Counsel rejected complaints on two occasions. As union and non-union applicants were treated alike the conduct of the Union could not reasonably have been construed as coercing or restraining members of the Union in the exercise of their Section 7 rights [NLRA, Section 8 (b)(1)(A)] or as causing an employer to discriminate [NLRA, Section 8(b) (2)]. See also NLRB v. Miranda Fuel Co., 2 Cir., 1963, 326 F.2d 172. The fact that in this case it is not "arguable" that the Union committed an unfair labor practice serves further to distinguish Garmon and Borden, for in each of those cases the Supreme Court did find it "arguable" that an unfair labor practice had been committed. See Garmon, supra, 359 U.S. at 245, 79 S.Ct. 773; Borden, supra, 373 U.S. at 694–695, 83 S.Ct. 1423.

Thus, as pointed out by Justice Harlan, in Borden it *was* "arguable" that the Union had committed unfair labor practices because there was evidence from which the Labor Board might well have concluded that Borden, by approaching the prospective employer directly, had endeavored to circumvent a lawful hiring-hall arrangement to the effect that the applicant must apply through the Union, or the Labor Board might have concluded that the Union had discriminated against Borden. The Board was to decide whether the Union was to be absolved because its conduct was an activity protected by Section 7, or whether the Union was to be found guilty of restraining or coercing Borden in the exercise of *his* Section 7 right to engage in a protected activity.

On the other hand, a perfectly reasonable, perhaps compelling, argument can be made in support of the proposition that the National Maritime Union was engaging in an activity protected by Section 7. It may very well be that the negotiation of a collective bargaining agreement by the terms of which narcotics violators were to be kept off the ships protected the good name and reputation of the Union and protected its members from association with those who used or trafficked in narcotics.

We must, therefore, decide whether the Labor Board has exclusive primary jurisdiction over causes of action based on denial of the procedural rights guaranteed by Section 101(a)(5) because the ultimate substantive purpose of the Union conduct might constitute a protected activity under Section 7 of the NLRA. The Union argues that deference to the Board is peculiarly appropriate in this case as it involves "employment" rights rather than "membership" rights.

▮▮ That cases presenting "employment" problems may be adjudicated by the federal courts for alleged violation of the requirements of LMRDA Section 101(a)(5) has already been held by this Court in Detroy v. American Guild of Variety Artists, 2 Cir., 1961, 286 F.2d 75, cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388. Detroy was the manager and trainer of a troupe of chimpanzees. A resort hotel in Las Vegas, Nevada had a breach of contract claim against him. AGVA, his union, requested arbitration, Detroy consented but refused to abide by the arbitrators' adverse decision. AGVA thereupon blacklisted Detroy, but without proffering charges and without a hearing. The primary issue in the case was whether Detroy should be required first to exhaust his union remedies before bringing suit in a federal court for violation of the provisions of LMRDA Section 101(a) (5). Having disposed of this issue in favor of Detroy, this Court then held that the violation of Detroy's procedural rights, guaranteed by Section 101(a)(5), was clear and the District Court was directed to issue a temporary injunction compelling the Union to remove Detroy's name from the blacklist. See also Gross

v. Kennedy, S.D.N.Y., 1960, 183 F.Supp. 750.

Here, as in Detroy, the suit is based not upon the right to employment free from unlawful union interference, but upon the "membership" right to the procedural safeguards laid down by Section 101(a)(5) as a condition to union discipline. While the question of the Labor Board's jurisdiction was mentioned neither in the briefs nor in the opinion for a unanimous court, the reasoning of Chief Judge Lumbard, 286 F.2d at 81, seems applicable to this issue:

"If a union such as the AGVA undertakes to enforce the contracts made by its members with employers, it does so because such enforcement is to the ultimate benefit of all the members, in that it promotes stability within the industry. A breach of contract or a refusal to abide by an arbitration award, therefore, is not damaging merely to the employer but to the union as well, and the union's listing of those of its members who do violate their contracts is an act of self-protection. In thus furthering its own ends the union must abide by the rules set down for it by Congress in § 101(a) (5), and any member against whom steps are taken by the union in the interest of promoting the welfare of the group is entitled to these guarantees."

Thus the integration of two federal statutes regulating labor, the NLRA and the LMRDA, is not difficult in this case. And it is to be observed that the Supreme Court itself has stated: "Garmon, however, does not state a constitutional principle; it merely rationalizes the problems of coexistence between federal and state regulatory schemes in the field of labor relations * * *. The purpose of Congress is the ultimate touchstone."

Retail Clerks Int'l Ass'n Local 1625, AFL–CIO v. Schermerhorn, 1963, 375 U.S. 96, 103, 84 S.Ct. 219, 222, 11 L.Ed.2d 179.

■ In our harmonizing process we cannot overlook the obvious. Congress must have known when it enacted Section 101(a)(5) that union discipline might frequently be imposed for purposes fully consistent with Section 7. Indeed, it is to be hoped that every time union discipline is imposed it is only for a legitimate union purpose. Still, Congress provided for jurisdiction in the federal District Courts to guarantee that unions observe certain minimum procedural safeguards. If we exclude from the operation of LMRDA Section 101(a) (5) every case where it is "arguable" that a valid union purpose has been served by the imposition of union discipline, we will undo what Congress has so carefully, and properly, done. We therefore hold that it is no defense to an action based upon a failure to observe the procedural requirements of LMRDA Section 101(a) (5) for a Union to allege or prove that it has disciplined a member for a legitimate union purpose and as part of a concerted activity protected by NLRA Section 7.

But it may well be that a case will arise where there has been both an "arguable" unfair labor practice, in violation of the NLRA, and also a failure to comply with the procedural requirements of LMRDA Section 101(a)(5). There is room for reasonable debate in such cases on the question of the preemptive jurisdiction of the Labor Board. As the Labor Board might be held to be able to afford a more complete remedy to a disciplined member than is possible in a case involving only protected activities, it may very well be that the courts should initially defer to the Labor Board. We leave this interesting problem for another day.[2]

---

2. Even in cases where discipline imposed by the Union might have constituted an unfair labor practice the Third and Fourth Circuits have assumed jurisdiction over causes of action predicated on Section 101(a) (5). Rekant v. Shoch-

tay-Gasos Union, 3 Cir., 1963, 320 F.2d 271; Parks v. International Bhd. of Elec. Workers, 4 Cir., 1963, 314 F.2d 886, 920–923, cert. denied, 372 U.S. 976, 83 S.Ct. 1111; see Burris v. International Bhd. of Teamsters, D.C.N.C., 1963, 224 F.

## III.

### Merits

We turn then to the merits of the case. Here again we eschew the attempt to distinguish between "employment" rights and "membership" rights. We reaffirm Detroy and hold that under certain circumstances union interference with the employment opportunities of its members may constitute "discipline" within Section 101(a)(5). See also Parks v. International Bhd. of Elec. Workers, 4 Cir., 1963, 314 F.2d 886, 922, cert. denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142.

But in this case, unlike Detroy where the union acted unilaterally in blacklisting the plaintiff member, the refusal to register and refer was pursuant to the terms of a collective bargaining agreement and in compliance with the declared policy of the shipowners that they will hire no seaman known to have a narcotics conviction. This was no more "discipline," once appellees admitted their convictions and the applicability to them of the terms of the collective bargaining agreement, than it would have been to turn down an applicant who admitted that he lacked a physical requirement for the job or who admitted that he fell outside the age limits specified by the employer.

Had appellees disputed the fact of their convictions, the determination by the Union or its agent that they had been convicted would, of course, have constituted "discipline" entitling the members to the procedural safeguards of Section 101(a)(5). Having admitted their convictions and consequent disqualification from employment under the collective bargaining agreement, appellees' claim to a hearing must fail.

Whether or not the refusal by the Union to refer appellees constituted a breach of the Union's duty of fair representation, see, e. g., Humphrey v. Moore,

1964, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed. 2d 370; Hiller v. Liquor Salesmen's Union Local 2, 2 Cir., 1964, 338 F.2d 778 and cases there cited, a matter not presented to us and which we do not decide, it is clear that, under the circumstances of this case, the Union's conduct did not amount to "discipline." Nothing in Section 101(a)(5) compels a union to grant a hearing concerning whether it ought to negotiate with an employer regarding a change in hiring policies expressed in a collective agreement. Such matters of collective bargaining strategy are not to be confused with the union discipline at which Section 101(a)(5) is aimed. See Blumrosen, The Worker and Three Phases of Unionism, 61 Mich.L.Rev. 1435, 1501-04 (1961); cf. Allen v. Armored Car Chauffeurs Union, D.C.N. J., 1960, 185 F.Supp. 492, 494.

We therefore reverse the judgment below and direct that the complaint be dismissed.

Reversed.

Supp. 277; cf. Grand Lodge of Int'l Ass'n of Machinists v. King, 9 Cir., 1964, 335 F.2d 340, 346-347, cert. denied, 379

U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334; Barunica v. United Hatters, 8 Cir., 1963, 321 F.2d 764.