Lawrence MOORE and Walter F. Whelan, Jr., Plaintiffs,

v.

**LOCAL 569 OF the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, et al., Defendants.**

No. 85–1719–B(M).

United States District Court, S.D. California.

Feb. 12, 1987.

George L. de la Flor, Phin and de la Flor, San Diego, Cal., for plaintiffs.

Ellen Greenstone, Levy, Goldman, Greenstone & Hubel, Los Angeles, Cal., Terry R. Yellig, Sherman, Dunn, Cohens, Leifer & Counts, Washington, D.C., Jennifer T. Messersmith, Messersmith & Fuchsman, San Diego, Cal., for defendants.

## OPINION AND ORDER

BREWSTER, District Judge.

Plaintiffs' first amended complaint alleges causes of action under the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 529–530 (1985), and the Labor-Management Relations Act, 29 U.S.C. § 185 (1978). The complaint identifies Moore and Whelan as members of the International Brotherhood of Electrical Workers ("IBEW") and lists twenty-five causes of action against Local 569 of the IBEW ("the Local"), the IBEW, and various individuals employed by the Local.

Each of the defendants has moved for summary judgment, and in the alternative for judgment on the pleadings, as to some of plaintiffs' causes of action.

Much of the complaint concerns plaintiffs' allegations that the Local and the individual defendants deliberately failed to refer plaintiffs for employment. The Inside Agreement ("Agreement"), a collective bargaining agreement between the Local and area contractors, contains a referral procedure by which electrical workers gain employment. Pursuant to this procedure, the Local maintains an "out-of-work list" (for which non-members are eligible) and lists the job applicants in chronological order of the dates they register their availability for employment. A member referred for a "short call", a position producing less than forty hours of work, regains his former position on the list and need not begin again at the bottom of the list. This rule does not apply to applicants who voluntarily terminate their positions before forty hours of work.

Plaintiffs allege discriminatory dispatching of applicants for work assignments. The complaint states that members are frequently restored to their place on the list even if they have (1) exceeded forty hours of work or (2) voluntarily terminated a job. Plaintiff Whelan alleges that in similar circumstances he was placed at the bottom of the list. Plaintiff Moore alleges he was referred but improperly rejected by the employer even though qualified for the job. The employer allegedly wanted to hire particular individuals and did so after they were dispatched by the Local from the *bottom* of the out-of-work list. Plaintiffs allege that this "discriminatory dispatching," as they call it, was intended as discipline for, *inter alia*, plaintiffs' exercise of rights protected by 29 U.S.C. § 411 and their participation in a previous lawsuit against the defendants.

## I. DISCIPLINE UNDER THE LMRDA

Plaintiffs allege in the first, fourth, and thirteenth causes of action that defendants' conduct constituted "discipline" of union

members prohibited by the LMRDA, 29 U.S.C. § 529.[1] The Court finds that all three claims state a cause of action and, therefore, denies defendants' motions for judgment on the pleadings.

### A. Claims against the Local and the Individual Defendants

The Court's analysis regarding the claims against the Local and the individual defendants begins with the cases relied upon by defendants. In *Finnegan v. Leu*, 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982), the Supreme Court held that dismissal of union business agents by the union president, following his election over the candidate supported by the plaintiff business agents, did not constitute unlawful discipline under § 529. Plaintiffs in *Finnegan* claimed their removal from union employment constituted unlawful retaliation for exercise of rights protected by the LMRDA's "Bill of Rights", 29 U.S.C. § 411. The Court, however, emphasized that "it was rank-and-file union members— not union officers or employees, as such— whom Congress sought to protect." *Id.* at 437, 102 S.Ct. at 1871. The Court thus concluded that § 529 "refers only to retaliatory actions that affect a union member's rights or status *as a member* of the union" and that "[i]n contrast, discharge from union employment does not impinge upon the incidents of union membership." *Id.* at 437–38, 102 S.Ct. at 1871 (emphasis in original). In short, plaintiffs' claims failed because their termination as union officials had affected neither their rights nor status as union members.

*Finnegan* was applied in two subsequent Court of Appeals decisions. *Turner v. Local Lodge 455 of the Int'l Bhd. of Boilermakers*, 755 F.2d 866 (11th Cir.1985); *Hackenburg v. International Bhd. of Boilermakers*, 694 F.2d 1237 (10th Cir. 1982). Plaintiffs in both *Turner* and *Hack-*

*enburg* had been involved in wildcat strikes prohibited under the governing collective bargaining agreements. These agreements also provided that members who participated in such strikes must be "benched" (i.e., not referred for employment by the union hiring hall). Under such facts, both courts held that enforcement of the collective bargaining agreements against plaintiffs did not constitute discipline under § 529, as interpreted in *Finnegan*. Defendants herein assert that these cases stand for the proposition that no interference with member employment through alleged improper application of the referral procedure can ever constitute "discipline" as that term is used in § 529. This Court cannot agree.

None of the cases discussed above addresses the question before the Court: whether alleged discriminatory dispatching may constitute "discipline" when done for retaliatory motives and not pursuant to a collective bargaining agreement. First, the Court believes that none of the holdings of these cases is controlling as each involved circumstances very different from those alleged here. Defendants nevertheless assert the language contained in the cases extends to these facts. This argument assumes that the cases rejected the cause of action explicitly recognized in *Figueroa v. National Maritime Union*, 342 F.2d 400 (2d Cir.1965). However, none of the cases cited by defendants overrules, criticizes, or even mentions *Figueroa*.

In *Figueroa*, the terms of a collective bargaining agreement gave employers final say on whether to accept or reject an applicant referred from the union hiring hall. The employers' established policy was to reject applicants who had narcotics convictions. When the union refused to register or refer for employment three seamen with drug convictions, they challenged the ac-

---

1. Section 529 provides:
   "It shall be unlawful for any labor organization, or any officer, agent, shop steward or other representative of a labor organization, or any employee thereof to fine, suspend, expel *or otherwise discipline* any of its members for exer-

cising any right to which he is entitled under the provisions of this chapter. The provisions of Section 412 of this title shall be applicable in the enforcement of this section." (emphasis added.)

tion as unlawful discipline. The court began its analysis by noting:

> We reaffirm Detroy and hold that under certain circumstances union interference with the employment opportunities of its members may constitute "discipline" within Section 101(a)(5).

*Figueroa*, 342 F.2d at 406. The court, however, went on to reject plaintiffs' argument because the union's refusal to register and refer "was no more 'discipline', once appellees admitted their convictions and the applicability to them of the terms of the collective bargaining agreement, than it would have been to turn down an applicant who admitted that he lacked a physical requirement for the job...." *Id.* Rather than foreclosing the cause of action recognized in *Figueroa*, *Hackenburg* and *Turner* merely track *Figueroa* in that each case held that under the facts of those cases enforcement of a collective bargaining agreement against a union member did not constitute "discipline."

■ The Court believes the defendants' allegedly discriminatory referral procedures affected the plaintiffs' *rights* as members of the union. Plaintiffs had rights under §§ 4.11, 4.12, and 4.13 [2] of the Inside Agreement to nondiscriminatory administration by the Local of the out-of-work list. The ability of non-members to belong to the list in no way diminishes these rights. Defendants urged during the hearing that such a conclusion directly contradicts the following statement in *Turner*:

> The word "discipline" refers only to a retaliatory act that would affect a union member's rights or status as a *member* of the union. The "benching" here, of course, does not do that because one is

not required to belong to the union to be carried on the out-of-work list and be referred to prospective employers when one's turn arrives.

755 F.2d at 869 (emphasis in original).

The Court finds this passage confusing and, in any case, unhelpful to defendants. One could interpret the excerpt as addressing only the effect of the benching upon the members' *status*. The benching did not affect membership *status* because that is independent from eligibility for the list; members and non-members can be referred. Even if this reading is correct, the passage said nothing about members' *rights* to be referred. The Court infers, and the *Turner* Court does not contradict, that plaintiffs therein had no rights to be referred because of their involvement in wildcat strikes prohibited under the collective bargaining agreement. In contrast, plaintiffs here allege interference with their right to be referred for work, a right this Court recognizes.

The Court perceives a more fundamental problem with the above-cited language in *Turner*. The second sentence contains a non-sequitur. It simply does not follow that a given action (in that case, benching) does not affect a member's rights or status simply because non-members may belong to the list. In fact, the ability of non-members to belong to the out-of-work list has absolutely no bearing on whether a Local's action affects members' rights or status. For example, it is incontrovertible that if plaintiffs in *Turner* had been suspended, they would have been "disciplined." Yet, these plaintiffs presumably could have remained on the list and been referred to

---

**2.** The Agreement provides:

Section 4.11. The Union shall maintain an "Out of Work List" which shall list the applicants within each Group in chronological order of the dates they register their availability for employment.

Section 4.12. An applicant who is hired and who receives through no fault of his own, work of forty hours or less shall, upon reregistration, be restored to his appropriate place within his Group.

Section 4.13. Employers shall advise the Business Manager of the Local Union of the

number of applicants needed. The Business Manager shall refer applicants to the Employer by first referring applicants in Group 1 in the order of their place on the "Out of Work List" and then referring applicants in the same manner successively from the "Out of Work List" in Group 2, then Group 3, and then Group 4. Any applicant who is rejected by the Employer shall be returned to his appropriate place within his Group and shall be referred to other employment in accordance with the position of his Group and his place within his Group.

employers since "one is not required to belong to the union to be carried on the out-of-work list." *Turner,* 755 F.2d at 869. In short, this passage from *Turner* is confusing because the relationship posited between eligibility for the list and the discipline issue does not exist. The Court thus rejects defendants' argument that this language, which in any case is dicta, should be read to bar a finding that "discipline" may include a discriminatory dispatching in retaliation for exercise of protected rights under the LMRDA.

■ Finally, if the allegedly punitive actions taken by the Local against plaintiffs do not constitute "discipline" as that term is used in 29 U.S.C. § 529, the phrase "otherwise disciplined" would appear largely devoid of meaning. It is a well-established canon of statutory construction that statutes should not be read to render terms mere surplusage. Defendants offered at the hearing examples of "discipline" unrelated to employment which would give the phrase meaning. For example, defendants asserted that a prohibition on attendance at Local meetings would affect a member's rights or status and would thereby constitute discipline. Conceding *arguendo* this point, the Court cannot believe Congress intended results that offend common sense. *Hackenburg* itself contains the observation that "Congress was anxious to prevent arbitrary actions on the part of union officers which worked to the detriment of the rank and file members...." 694 F.2d at 1239. Defendants ask us to conclude Congress protected the right of members to attend meetings but not a far more significant right—the freedom to express one's views without jeopardizing one's ability to work and earn a living. The Court is unable to interpret § 529 to create such inconsistent results.

■ In conclusion, the Court follows *Figueroa*'s holding that interference with employment opportunities can constitute discipline. No decision by the Ninth Circuit suggests a different result. Therefore, the Court denies the motions by the Local and the individual defendants for summary judgment as to the first and thirteenth causes of action.

### B. Claims that IBEW's rejection of plaintiffs' appeals constitutes discipline

Plaintiff Whelan, in connection with the alleged discriminatory dispatching, filed charges with the IBEW. The complaint states in paragraph twenty-six that such charges were summarily denied by defendant IBEW, "said defendant denying that it had jurisdiction over the charges." The fourth cause of action alleges that the actions of IBEW in "arbitrarily rejecting" the charges were intended as discipline for plaintiff's participation in the prior suit against IBEW. Whelan further alleges that such actions "were motivated by the support of and/or collusion with defendants Blackwood [and] Local 569...."

Plaintiff Moore also charges the IBEW with discipline prohibited by 29 U.S.C. § 529. In the thirteenth cause of action, Moore alleges "the conduct of the [IBEW]," presumably its rejection of Moore's claim, "was intentionally imposed discipline in retaliation for the exercise of his [rights under 29 U.S.C. § 411]." Moore does not allege explicitly that the IBEW acted in collusion with the Local or in bad faith.

The IBEW can be liable only if it acted in bad faith in reviewing the charges. Although defendant IBEW attempts to distance itself from the actions of the Local, it is clear that plaintiffs' claims do not rest on vicarious liability or agency theories. Rather, Whelan and Moore premise liability on IBEW's handling of the charges. In rejecting the charges, IBEW allegedly disciplined them in violation of LMRDA. Such allegations need only be measured against one test: "Where the *only action* taken by a national or international union is in the nature of an appellate review of the action of a local union, and the national or international union exercises its appellate function *in good faith and in the absence of fraud,* the national or international union should not be held answerable *in dam-*

*ages* to a member who was wrongfully disciplined by the local union." *International Bhd. of Elec. Workers v. NLRB*, 487 F.2d 1113, 1129 (D.C.Cir.1972) (emphasis in original).

■ The fourth cause of action survives this test. The IBEW's allegedly arbitrary action in rejecting Whelan's charges was "motivated by ... collusion" with the other defendants. If true, the IBEW's review cannot be said to have been conducted in good faith. Moore's claim, liberally construed, also states a cause of action against the IBEW. Moore alleges the IBEW's rejection of his charges was "intentionally imposed discipline", the purpose of which was to retaliate. The Court reads this as alleging that IBEW's review of Moore's charges was not done in good faith. Thus, the Court denies defendant IBEW's motions with respect to the fourth and thirteenth causes of action.

## II. BREACH OF CONTRACT CLAIMS

### A. *Claim against the Local*

Plaintiff Whelan alleges in the second cause of action that the Local breached its obligations toward him by its discriminatory dispatching. The contract which the Local allegedly breached is the IBEW Constitution. There does not appear to be a contract between Whelan and the Local.

■ Article XXII, § 3 of the IBEW Constitution provides as follows:

The acceptance of an application for membership, and the admission of the applicant into any L.U. of the I.B.E.W., constitutes a contract between the member, *the L.U.*, and the I.B.E.W., and between such member and all other members of the I.B.E.W.

(emphasis added). This language appears to provide that upon admission into a local

("L.U."), a contract is formed between *that* local and the newly admitted member. It does not appear that any contracts are created between the member and other locals within the IBEW. Pargraphs 12 and 14 of the complaint state that Whelan is a member of IBEW, but that he is *not* a member of the defendant Local. Thus, the Court grants the Local's motion for judgment on the pleadings because no contract exists between Whelan and the Local which could be the subject of a breach.[3]

The Court wishes to emphasize, however, that its holding is narrow. Whelan alleges in paragraph 38 of the complaint that the Local breached the contractual relationship created by Article 22 of the IBEW Constitution. The Court grants the Local's motion for judgment on the pleadings simply because the provisions relied upon by plaintiff do not establish a contract which could be breached. The Court does not hold that plaintiff could allege no facts establishing a contractual relationship between Whelan and the Local, only that Whelan has failed to do so in the first amended complaint. Therefore, plaintiff is granted thirty days from entry of this order to amend the second cause of action.

### B. *Claims against the IBEW*

Plaintiffs allege in counts five and eleven that IBEW breached a contractual duty under Article XVII of the IBEW Constitution to investigate and act upon meritorious charges filed by a member. Plaintiffs rely in particular upon the following provisions:

Article XXVII Misconduct, Offenses and Penalties

Section 1. Any member may be penalized for committing any one or more of the following offenses:

(1) Violation of any provision of this Constitution and the rules herein, or the

---

**3.** The Court makes no ruling regarding liability of the union officials named as defendants in the second cause of action. Counsel for these defendants stated in their brief and at the hearing that, as to the second and seventeenth causes of action, a stipulation dismissing the individual defendants would be forthcoming. Apparently plaintiffs now refuse to sign such a

stipulation. *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), provides reason to doubt whether a breach of contract action lies against union officials. This court, however, reserves judgment on this issue until it is made the subject of a motion and until the Court has had the benefit of briefing from all parties.

bylaws, working agreements, or rules of a L.U.

(2) Having knowledge of the violation of any provision of this Constitution, or the bylaws or rules of a L.U., yet failing to file charges against the offender or to notify the proper officers of the L.U.....

(5) Engaging in any act or acts which are contrary to the member's responsibility toward the I.B.E.W., or any of its L.U.'s, as an institution, or which interfere with the performance by the I.B. E.W. or a L.U. with its legal or contractual obligations....

(7) Wronging a member of the I.B. E.W. by any act or acts (other than the expression of views or opinions) causing him physical or economic harm.

■ The Court agrees with defendant IBEW's argument that these causes of action must be dismissed. First, these provisions do not appear even to apply to the IBEW. These provisions prohibit certain conduct by "members", not the IBEW. Second, plaintiffs cannot identify precisely which provision was violated. The only provision which even arguably gives rise to a cause of action for breach of contract is subsection seven. However, to assert that this provision grants plaintiffs certain rights under the contract/constitution merely begs the question. The IBEW's actions are only "wrong", and thus a breach of contract, if there is some independent provision imposing upon the IBEW certain obligations and if such provision was violated. In other words, subsection seven cannot itself give rise to a breach of contract action when the very question is whether a wrong was committed.

The Court considers IBEW's Rule 12(c) motion as a motion to dismiss for failure to state a claim upon which relief can be granted. The Court hereby grants the motion but believes plaintiffs should be provided 30 days from the entry of this order to amend their amended complaint. The IBEW Constitution, Article XVII Section 12, provides that aggrieved members may appeal to the IBEW within 45 days of the acts complained of. The law may imply in

this provision a duty to consider all appeals in good faith. An action in contract for breach of this implied provision may lie. Thus, the Court does not hold that plaintiffs could never state causes of action against the IBEW for breach of contract, but merely that they have not done so in the first amended complaint.

### III. ACTIONS FOR BREACH OF COVENANTS OF GOOD FAITH AND FAIR DEALING IMPLICIT IN THE IBEW CONSTITUTION AND THE AGREEMENT

In five causes of action, plaintiffs allege that the IBEW, the Local, and several of the individual defendants tortiously breached covenants of good faith and fair dealing arising out of the IBEW Constitution and the Inside Agreement between the Local and the area contractors. Plaintiffs contend defendants' actions prevented plaintiffs from enjoying the fruits of the agreement. All defendants assert that these state law claims are preempted by federal law and must, therefore, be dismissed.

The Supreme Court recently addressed the breadth of federal preemption by the Labor Management Relations Act of state causes of action. In *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the Court held that LMRA § 301, 29 U.S.C. § 185, preempted a claim of bad faith under a disability insurance plan included in a collective bargaining agreement. Section 185 provides that suits for violation of labor contracts may be brought in District Court. Suits under this provision must be determined by federal law. " 'The subject matter of § 301 is peculiarly one that calls for uniform federal law.... The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.' " *Id.* at 210, 105 S.Ct. 1910, (quoting *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–104, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962)).

■ The Court discussed preemption of claims, such as those presented in this case

and *Lueck*, which do not allege breach of contract:

> If the policies that animate § 301 are to be given their proper range, the pre-emptive effect of § 301 must extend beyond suits alleging contract violations.... Thus, questions relating to what the parties to a labor contract agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.

*Id.* 105 S.Ct. at 1911. With these considerations in mind the Court formulated the following test. If the state law giving rise to the claim creates rights and obligations *independent* of the labor contract or collective bargaining agreement (e.g., state laws regulating labor standards and safety conditions), the federal law is not preemptive. On the other hand, "[i]f the state tort law purports to define the meaning of the contract relationship, that law is preempted." *Id.* at 1912. Applying this test, the Court found that 29 U.S.C. § 185 preempted the claim that the defendants breached their duty to act in good faith and deal fairly with plaintiff's disability claims. "Since the extent of [this] duty ultimately depends upon the terms of the agreement between the parties, [it is] tightly bound with questions of contract interpretation that must be left to federal law." *Id.* at 1914.

■ *Lueck* mandates a finding that plaintiffs' claims are preempted by section 185. As in *Lueck*, the relevant state law (here, California) provides an implied covenant of good faith that neither party will injure the right of the other to receive the fruits of the agreement. *Cleary v. American Airlines*, 111 Cal.App.3d 443, 168 Cal. Rptr. 722 (1980). This state law does not impose duties independent of the contractual relationship. On the contrary, resolution of plaintiffs' claims necessarily forces the court to refer to the terms of the contracts at issue. The court, for example, would have to consider the extent to which the contracts granted plaintiffs rights to be referred for employment before determining whether defendants had acted in bad faith by thwarting the exercise of such rights. Thus, as in *Lueck*, the alleged breach of the duty of good faith is "tightly bound with questions of contract interpretation that must be left to federal law." Thus, the Court grants summary judgment in favor of the defendants as to the third, sixth, twelfth, nineteenth, and twentieth causes of action.

## IV. LIABILITY OF INDIVIDUAL DEFENDANTS

■ The individual defendants assert that no damages can be recovered from them. They rely upon 29 U.S.C. § 185(b), which provides:

> Any labor organization ... shall be bound by the acts of its agents.... Any money judgment against a labor organization ... shall not be enforceable against any individual member or his assets.

As an initial matter, the individual defendants' motions with regard to the third and twentieth causes of action are moot because the Court has already held that these claims are preempted. Plaintiffs' eighteenth cause of action alleges a state claim for intentional infliction of emotional distress arising out of Whelan's unsuccessful attempt to "turn in" his traveller status and thereby become a member of the defendant Local. Whelan claims that the state causes of action alleging intentional wrongful conduct do not fall within the ambit of § 185(b) immunity. The defendants, however, invite the Court's attention to *Peterson v. Kennedy*, 771 F.2d 1244, 1257 (9th Cir.1985), which explicitly recognized that state tort actions may not be brought against individual union officials. Given the plaintiffs' failure to provide any reason why *Peterson* and the cases discussed therein should not be followed, summary judgment is granted in favor of the individual defendants on the eighteenth cause of action.

## V. PLAINTIFF MOORE'S CAUSE OF ACTION UNDER 29 U.S.C. § 530

■ Defendants argue that 29 U.S.C. § 530 provides only for criminal penalties

for the forbidden acts and thus plaintiff's civil action should be dismissed.[4] The statute provides as follows:

> § 530. Deprivation of rights by violence; penalty
>
> It shall be unlawful for any person through the use of force or violence, or threat of the use of force or violence, to restrain, coerce, or intimidate, or attempt to restrain, coerce, or intimidate any member of a labor organization for the purpose of interfering with or preventing the exercise of any right to which he is entitled under the provisions of this chapter. Any person who willfully violates this section shall be fined not more than $1,000 or imprisoned for not more than one year, or both.

The only case on point, *Schonfeld v. Raftery*, 335 F.Supp. 846, 851 (S.D.N.Y. 1971), holds that this statute does not permit enforcement by a civil action for damages. Although the plaintiff may be correct that *Schonfeld* misused precedent, which this Court does not here decide, there are independent grounds for following that decision. The legislative history does not indicate that Congress intended this section to serve as the basis for private causes of action. Moreover, there has not been a single case recognizing plaintiff's cause of action. This probably reflects the fact that a separate provision of the LMRDA, 29 U.S.C. § 412, allows any person whose rights have been infringed to bring an action for relief in District Court. It thus appears that plaintiff's action should be brought, if at all, under § 412. The Court thus grants summary judgment for the defendants on the twenty-second cause of action.

Now, therefore, the Court enters the following ORDER:

Defendant IBEW's motions for judgment on the pleadings or for summary judgment are denied as to the fourth and thirteenth causes of action. The IBEW's motions are granted as to the fifth, sixth, eleventh, twelfth, nineteenth, and twenty-second causes of action. Plaintiffs are granted 30 days leave to amend as to the fifth and eleventh causes of action only.

The motions for judgment on the pleadings or for summary judgment brought by the individual defendants and Local 569 are denied as to the first and thirteenth causes of action. These defendants' motions are granted without leave to amend as to the third, twentieth, and twenty-second cause of action.

The defendant Local's motion as to the second cause of action is granted with 30 days leave to amend. The individual defendants' motions as to the eighteenth cause of action are granted without leave to amend.

---

4. Although defendants argue plaintiff Moore has no standing, it seems more appropriate simply to ask whether this statute provides plaintiff with a civil cause of action. The standing doctrine, in contrast, asks whether plaintiff has suffered an injury sufficient to create a "case or controversy" over which the court may exercise jurisdiction.